# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **DEXTER DARNELL JOHNSON**, | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:19-CV-03047 |
| | § | |
| **LORIE DAVIS**, Director, | § | **DEATH PENALTY CASE** |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions | § | |
| Division, | § | |
| *Respondent*. | § | |

---

## REPLY TO RESPONDENT'S MOTION TO DISMISS
## PETITION AS SUCCESSIVE

---

JASON D. HAWKINS
Federal Public Defender

Jeremy Schepers (TX 24084578)
Supervisor, Capital Habeas Unit

Jessica Graf (TX 24080615)
Assistant Federal Defender

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746
214-767-2886 (fax)
Jeremy_Schepers@fd.org

# Table of Contents

Table of Contents.........................................................................................................i

Table of Authorities ..................................................................................................ii

Reply Argument ....................................................................................................... 1

I.    Mr. Johnson satisfied 28 U.S.C. § 2244(b)(2)(A) by establishing his *Atkins* claim was previously unavailable................................................... 2

II.    Mr. Johnson can establish grounds for equitable tolling because he is intellectually disabled and prior counsel engaged in professional misconduct—not because prior counsel was merely "ineffective."................... 8

III.    This Court may consider Mr. Johnson's evidence of intellectual disability and grant relief. ............................................................................... 11

    A.    The Texas Court of Criminal Appeals (CCA) dismissed Mr. Johnson's *Atkins* claim without adjudicating the merits, and no deference is owed under § 2254(d). ...................................................... 12

    B.    Even if § 2254(d) applies, the CCA's decision was both legally and factually unreasonable. .......................................................... 13

    C.    *Pinholster* does not preclude this Court from considering Mr. Johnson's evidence. ............................................................... 20

Conclusion and Prayer for Relief ......................................................................... 21

Certificate of Service.............................................................................................. 22

i

## Table of Authorities

**Page(s)**

**Cases**

*Atkins v. Virginia,*
   536 U.S. 304 (2002) ................................................................................ 1

*Barrientes v. Johnson,*
   221 F.3d 741 (5th Cir. 2000) ................................................................ 20

*In re Bowles,*
   935 F.3d 1210 (11th Cir. 2019) .............................................................. 3

*Busby v. Davis,*
   925 F.3d 699 (5th Cir. 2019) ................................................................ 12

*In re Cathey,*
   857 F.3d at 232 ....................................................................... 3, 4, 5, 8

*Christeson v. Roper,*
   574 U.S. 373 (2015) .............................................................................. 10

*Cullen v. Pinholster,*
   563 U.S. 170 (2011) .............................................................................. 20

*Fisher v. Johnson,*
   174 F.3d 710 (5th Cir. 1999) ................................................................ 11

*Henderson v. Thaler,*
   626 F.3d 773 (5th Cir. 2010) .................................................................. 8

*Hernandez v. Stephens,*
   537 F. App'x 531 ............................................................................... 5, 6

*Holland v. Florida,*
   560 U.S. 631 (2010) .............................................................................. 11

*Johnson v. Davis,*
   4:11-cv-2466 (S.D. Tex.) ............................................................... 5, 9, 10

*In re Johnson,*
   935 F.3d 284 (5th Cir. 2019) ..........................................................*passim*

*Ex parte Johnson,*
   No. 73,600-02 (Tex. Crim. App. 2019) ................................................ 18

*Martel v. Clair,*
    565 U.S. 648 (2012) .......................................................................... 10

*McQuiggin v. Perkins,*
    569 U.S. 383 (2013) ....................................................................... 8, 9

*Moore v. Texas,*
    137 S. Ct. 1039 (2017) ................................................................ 13, 14

*Moore v. Texas,*
    139 S. Ct. 666 (2019) ....................................................................... 13

*In re Morris,*
    328 F.3d 739 (5th Cir. 2003) .............................................................. 2

*Palacios v. Stephens,*
    723 F.3d 600 (5th Cir. 2013) ............................................................ 11

*Reyes-Requena v. United States,*
    243 F.3d 893 (5th Cir. 2001) .............................................................. 2

*Shoop v. Hill,*
    138 S. Ct. 504 (2019) ......................................................................... 4

*Smith v. Cain,*
    708 F.3d 628 (5th Cir. 2013) ............................................................ 20

*In re Sparks,*
    939 F.3d 630 (5th Cir. 2019) ........................................................... 4, 5

*Tamayo v. Stephens,*
    740 F.3d 986 (5th Cir. 2014) .............................................................. 9

*Tyler v. Cain,*
    218 F.3d 744 (Table), 2000 WL 821489 (5th Cir. 2000) ......................... 2

*Wiley v. Epps,*
    625 F.3d 199 (5th Cir. 2010) ............................................................ 12

**Statutes**

18 U.S.C. § 3599 ................................................................................ 10

28 U.S.C. § 2244 ........................................................................ *passim*

28 U.S.C. § 2254(d) .................................................................... *passim*

**Other Authorities**

American Psychiatric Association, *Diagnostic and Statistical Manual of
  Mental Disorders Fourth Edition Text Revision* (2000) ........................................ 14

American Psychiatric Association, *Diagnostic and Statistical Manual of
  Mental Disorders Fifth Edition* (2013) ................................................................ 15

Intellectual and Developmental Disabilities, *Intellectual Disability:
  Definition, Classification, and Systems of Support* (11th ed. 2010) .................... 18

iv

## Reply Argument

In her Motion to Dismiss Mr. Johnson's Amended Petition, the Director misconstrues Mr. Johnson's *Atkins*[1] claim, the prevailing medical standards that govern the claim, and the relevant, binding case law. Seeking to preclude Mr. Johnson from a fair hearing on his claim of intellectual disability, the Director ignores the significant changes reflected in the publication of the DSM-5, as well as binding Fifth Circuit authority on the definition of "previously unavailable." She argues that this Court should overlook the Fifth Circuit's order finding that Mr. Johnson could not have raised his *Atkins* claim in his initial federal petition and argues, for the first time, that this Court did not mean what it said when it denied relief on all but one of Mr. Johnson's claims in 2013.[2] None of the Director's arguments are credible.

Mr. Johnson has established that his claim was previously unavailable and can, if required, show equitable tolling is warranted. His case is extraordinary because prior counsel engaged in professional misconduct while representing him. Finally, Mr. Johnson has ample evidence he is intellectually disabled under current medical standards and the Director's protestations regarding the merits of the claim demonstrate that, at the very least, the disputed issues in this case warrant an evidentiary hearing.

---

[1] *Atkins v. Virginia*, 536 U.S. 304 (2002).

[2] The Director also states that Mr. Johnson's claim is procedurally defaulted but does not further argue the point. Doc. 13 at 8. As Mr. Johnson made clear in his Amended Petition, his *Atkins* claim is not procedurally defaulted because the state court's review of the claim was not independent of the federal question. Doc. 8 at 43–44.

## I.   Mr. Johnson satisfied 28 U.S.C. § 2244(b)(2)(A) by establishing his *Atkins* claim was previously unavailable.

To perform its role as the second gatekeeper, this Court must determine whether Mr. Johnson has met his burden to proceed on a successive petition. The Director has wrongly asserted that Mr. Johnson misstated the standard this Court must apply to make that determination. Doc. 13 at 4 (Motion to Dismiss). The Fifth Circuit has repeatedly held that a district court's duty in assessing an authorized successive petition is to "conduct a 'thorough' review to determine if the motion 'conclusively' demonstrates that it does not meet AEDPA's second or successive motion requirements." *See, e.g.*, *In re Morris*, 328 F.3d 739, 741 (5th Cir. 2003) (quoting *Reyes-Requena v. United States*, 243 F.3d 893, 899 (5th Cir. 2001)). Here, the Court must decide whether, on the face of the motion, it can conclusively determine that Mr. Johnson's *Atkins* claim was available to him when he filed his initial federal petition. *In re Johnson*, 935 F.3d 284, 292−94 (5th Cir. 2019). This gatekeeping question must be answered before the Court assesses other potential procedural obstacles. *See Tyler v. Cain*, 218 F.3d 744 (Table), 2000 WL 821489 at *1 (5th Cir. 2000) ("The district court erred in not determining first whether Tyler's petition satisfied AEDPA's successive habeas standard [before applying § 2254(d)].") Mr. Johnson's motion demonstrates that his *Atkins* claim was not available to him prior to the publication of the DSM-5; accordingly, dismissal at this stage of the proceeding would be improper.

This Court is, of course, bound by the Fifth Circuit's interpretation of 28 U.S.C. § 2244(b)(2)(A), which is that "a claim must have some possibility of merit to

be considered [previously] available." *In re Cathey*, 857 F.3d 221, 232 (5th Cir. 2017); *see also In re Johnson*, 935 F.3d at 292−93. In other words, a claim that would have been futile when the initial federal petition was filed, but which has become viable because of changed standards and methodologies for proving the claim, was previously unavailable for purposes of satisfying § 2244(b)(2)(A) in this circuit. The Director would have this Court overrule the Fifth Circuit and follow the Eleventh Circuit's opinion in *In re Bowles*, 935 F.3d 1210 (11th Cir. 2019), instead. *See* Doc. 13 at 4, 32−34, 36 ("The Eleventh Circuit explains it better and more succinctly, in soundly rejected [*sic*] the Fifth Circuit's holding that the publication of the DSM-5 makes a claim newly legally available."). *Bowles* held that a claim's functional unavailability on the basis that it had no merit under then-prevailing standards has no bearing on whether it was "previously unavailable" for § 2244 purposes. 935 F.3d at 1316. As the law stands in this circuit, the futility of Mr. Johnson's *Atkins* claim prior to the publication of the DSM-V and the changes that publication brought about in best clinical practices related to diagnosing intellectual disability, is probative of the claim's previous unavailability. *See In re Johnson*, 935 F.3d at 292−93; *In re Cathey*, 857 F.3d at 227.

The Director's pleadings are unclear as to whether the Director believes that the Fifth Circuit's determination on the availability of the *Atkins* claim is binding on this Court. In her opposition to Mr. Johnson's request for a hearing, the Director states that as she "admitted in her response filed contemporaneously with this motion, the Director's purpose in re-urging" her argument that the Fifth Circuit

incorrectly determined Mr. Johnson's claim was previously unavailable is to preserve error. Doc. 12 at 3 (Response in Opposition to Motion for Evidentiary Hearing). No clear concession is found in the Director's Motion to Dismiss. *See* Doc. 13 at 30−31 ("[E]ven assuming this Court is bound by the Fifth Circuit's holding . . . ."); *id.* at 33 ("But this Court need not overrule the panel's holding in this case to dismiss Johnson's petition."). Indeed, the Director continues to argue that *In re Cathey*, 857 F.3d 221 (5th Cir. 2017) was overruled by *Shoop v. Hill*, 138 S. Ct. 504 (2019)—an argument the Fifth Circuit squarely rejected. Doc. 13 at 31; *but see Johnson*, 935 F.3d at 293 ("*Shoop*, though, concerned the relitigation bar of Section 2254(d)(1), and it did not overrule *Cathey*, which concerned a *prima facie* showing under Section 2244."). Regardless of what the Director's position is, this Court is bound by the by the Fifth Circuit's interpretation of the law, and it is this Court's role as the second gatekeeper to apply that law to the facts of Mr. Johnson's case.

The Director now argues, for the first time, that Mr. Johnson's *Atkins* claim was not previously unavailable because he had over a year from the publication of the DSM-5 to amend his federal petition.[3] Doc. 13 at 21−22, 34 (citing *In re Sparks*, 939 F.3d 630 (5th Cir. 2019)). In support of her argument, the Director likens Mr. Johnson's situation to that of the petitioner in *Sparks*; but the Fifth Circuit specifically distinguished Mr. Johnson's case because Sparks, unlike Mr. Johnson,

---

[3] There is some confusion in the Director's pleadings as to whether she is making this argument to refute that Mr. Johnson's claim was previously unavailable—a showing necessary to surpass the "second gate" under § 2244(b)(2)(A) & (b)(4)—or that he merits equitable tolling. However, whether Mr. Johnson could have amended his initial petition to include the *Atkins* claim is relevant to whether the claim was previously unavailable. *In re Johnson*; 935 F.3d at 293; *see also In re Cathey*, 857 F.3d at 229.

4

had proceedings pending in both state and federal court when the DSM-5 was published, giving him "ample time and opportunity to explore and properly raise an intellectual disability claim" in an amended petition. 939 F.3d at 633. The Director, thus, again asks this Court to ignore the Fifth Circuit's finding that Mr. Johnson could not have amended his petition. The Director's argument is premised on her assertion that this Court did not deny Mr. Johnson's initial petition until June 24, 2014, a little more than one year after the publication of the DSM-5. Doc. 13 at 20−21. In fact, this Court denied relief on all of Mr. Johnson's claims except for his *Edwards* claim on August 19, 2013. Doc. 19 at 1, *Johnson v. Stephens*, No. 4:11-cv-2466 (S.D. Tex. 2013); *id.* at 50 (denying the "federal petition for a writ of habeas corpus on all but [Johnson's] first ground for relief"). Within that order, this Court explicitly denied Mr. Johnson's request to amend his federal petition. *Id.* at 13−15. As of August 19, 2013, Mr. Johnson could not amend his federal petition to include an *Atkins* claim.[4]

Moreover, under Fifth Circuit precedent, an *Atkins* claim that relies on medical advancements becomes available when Texas courts acknowledge those advancements—not necessarily when those advancements occur. *See In re Cathey*, 857 F.3d at 231 (explaining that the petitioner's arguments about the Flynn Effect became available when referenced by Texas courts). On August 2, 2013, the Fifth Circuit issued its opinion in *Hernandez v. Stephens*, 537 F. App'x 531, which was—to

---

[4] Even if this Court disagrees with Mr. Johnson on the operative dates for this analysis, Mr. McCann's misconduct was ongoing by this time period, including arguing that he was not ineffective in state court, in contravention of Mr. Johnson's interests. This supports both that an *Atkins* claim was functionally unavailable and that he is entitled to equitable tolling during this time period.

the best of Mr. Johnson's knowledge—the first time a Texas court mentioned the DSM-5. *Id.* at 533, n. 1. Even assuming, *arguendo*, that a footnote in an unpublished opinion should have placed Mr. Johnson on notice of the new availability of an *Atkins* claim, it was not feasible to secure investigative funding and leave to amend the petition in the 17 days between the unpublished opinion in *Hernandez* and the denial of his petition.

As the Director aptly notes, "[d]espite examinations by multiple mental health experts and clear Supreme Court precedent at the time [of trial], not one of Johnson's experts diagnosed him as intellectually disabled." Doc. 13 at 2. This point is crucial to establishing that Mr. Johnson's *Atkins* claim was previously unavailable. His trial expert relied on the standards for intellectual disability found in the DSM-IV-TR, which narrowly defined significantly sub average intellectual functioning as an IQ of about 70 or below. Doc. 8, Ex. 3 at ¶5. On the other hand, the DSM-5 removed IQ as the determining factor for intellectual functioning and placed far greater emphasis on neuropsychological testing and the presence of adaptive deficits, specifically noting that a person with an IQ score above 70 may, after a comprehensive evaluation, qualify as intellectually disabled. *Id.*, Ex. 4; *see also In re Johnson*, 935 F.3d at 293. Because of his pretrial reliance on IQ testing as determinative of the question, Dr. Watson, the expert who testified at trial that Mr. Johnson is not intellectually disabled, no longer stands by his conclusions. *Id.*, Ex. 3 at ¶9.

Yet, the Director uses Dr. Watson's testimony as evidence that Mr. Johnson's claim was not previously unavailable, repeatedly stating that Dr. Watson "specifically

6

testified Johnson . . . did not suffer from adaptive behavior deficits[.]" Doc. 13 at 2; *see also id.* at 16, 41. This allegation is patently false and disproved by the record before this Court. At trial, Dr. Watson testified that he *did not* evaluate Mr. Johnson's adaptive functioning because he believed it was unnecessary due to his IQ scores— Mr. Johnson's were too high for an intellectual disability diagnosis under the DSM-IV. 31 RR 263. Dr. Watson again confirmed that he never assessed adaptive deficits in a declaration attached to Mr. Johnson's Amended Petition. Doc. 8, Ex. 3 at ¶5. A viable *Atkins* claim was not available to Mr. Johnson under pre-DSM-5 medical standards, which satisfies 28 U.S.C. § 2244(b)(2)(A).

The Director next argues that the "real basis" of Mr. Johnson's *Atkins* claim is his recently obtained IQ score of 70 and expert reports. Doc. 13 at 25, 43. However, the basis of Mr. Johnson's claim, as explicitly recognized by the Fifth Circuit, is the revised standard for assessing intellectual disability in the DSM-5. *In re Johnson*, 935 F.3d at 293. Dr. Martell, who diagnosed Mr. Johnson as intellectually disabled under current standards, utilized Mr. Johnson's pretrial intelligence testing in his assessment. Doc. 8, Ex. 1 at 17–18. The recent score of 70, while significant, is not the core of Mr. Johnson's claim, nor is it the sole reason he is considered intellectually disabled today.

The Director's Motion to Dismiss also failed to address Mr. Johnson's argument that his *Atkins* claim was functionally unavailable because of prior counsel's deficient

representation.[5] *See* Doc. 8 at 15−16 (citing *In re Cathey*, 857 F.3d at 229). Prior counsel Patrick McCann acted detrimentally to Mr. Johnson pursuant to a significant conflict of interest. Mr. McCann knew of the conflict, and the limitations it placed on the scope and quality of his representation, but never informed Mr. Johnson and instead actively litigated against Mr. Johnson's best interests. *Id.* The conflicted and otherwise inadequate representation Mr. Johnson received is another factor that rendered his *Atkins* claim functionally unavailable in his initial federal proceeding. At a minimum, this Court should order an evidentiary hearing to allow Mr. Johnson the opportunity to establish that the claim was previously unavailable.

## II.   **Mr. Johnson can establish grounds for equitable tolling because he is intellectually disabled and prior counsel engaged in professional misconduct—not because prior counsel was merely "ineffective."**

Because Mr. Johnson is intellectually disabled, he is actually innocent of the death penalty and his *Atkins* claim is not subject to the statute of limitations based on the rationale delineated in *McQuiggin v. Perkins*, 569 U.S. 383 (2013). The Director erroneously declared that "binding precedent" precludes actual innocence of the death penalty as an exception to the statute of limitations, citing *Henderson v. Thaler*, 626 F.3d 773 (5th Cir. 2010). Doc. 13 at 27. Of course, *Henderson* was decided three years before the Supreme Court handed down *Perkins* and the Fifth Circuit has

---

[5] Because the Director did not dispute any of Mr. Johnson's allegations or legal arguments related to Mr. McCann's misconduct, this Court should construe the Motion to Dismiss as a concession on this issue and all other claims and arguments the Director did not demur.

since explicitly avoided resolving whether *Perkins* applies to actual innocence of the death penalty. *Tamayo v. Stephens*, 740 F.3d 986, 990 (5th Cir. 2014).

But even if the statute of limitations applies, Mr. Johnson can show he is entitled to equitable tolling. The Director's primary argument against tolling is that Mr. Johnson merely complains of ineffective assistance by his former federal habeas counsel. In fact, the Director takes the bold position that prior counsel's actions "do not demonstrate *any* neglect." Doc. 13 at 24 (emphasis in original). However, as made clear in Mr. Johnson's Amended Petition, prior counsel was not merely neglectful, but *actively litigated* against Mr. Johnson's best interest when counsel knew his actions were wrong. Texas ethics expert Robert Schuwerk reviewed Mr. McCann's actions and determined that he "violated his fiduciary duty of loyalty to Mr. Johnson, as well as the corresponding disciplinary rule outlining his ethical duties as an attorney for Mr. Johnson[.]" Doc. 8, Ex. 2 at ¶14.

Mr. McCann must have known that he had a conflict of interest with Mr. Johnson, but instead of withdrawing, he took proactive measures to protect his own interests over his client's. While Mr. McCann withdrew from other cases in which he had the same conflict, citing his belief that it was his "ethical duty" to do so, he continued to represent Mr. Johnson and specifically told this Court *he* had determined he did not provide ineffective assistance to Mr. Johnson in state postconviction, thereby undermining the very legal argument he presented on Mr. Johnson's behalf. *See* Doc. 95 at 10−11, 14, *Johnson v. Davis*, 4:11-cv-2466 (S.D. Tex. 2019). He never informed Mr. Johnson of his conflicted loyalties and continued to

litigate against Mr. Johnson's interests until finally withdrawing from the case on May 2, 2019. *Id.* at 13.

The Motion to Dismiss flatly ignored Mr. McCann's ethical violations and never referenced Mr. Schuwerk's findings. Instead, the Director repeatedly misconstrued Mr. Johnson's argument as "the distorting effects of hindsight to complain of the effectiveness of counsel." Doc. 13 at 24. The argument does not withstand scrutiny because Mr. McCann withheld information related to the existence of his conflict from Mr. Johnson and actively resisted Mr. Johnson's request for the appointment of conflict-free co-counsel. Hindsight and ineffectiveness are not implicated; rather, Mr. Johnson's attorney took affirmative action to deprive him of the disinterested, professional, quality representation to which he is statutorily entitled. *See* 18 U.S.C. § 3599; *Martel v. Clair*, 565 U.S. 648, 659 (2012) (Section 3599 bestows "enhanced rights of representation" to capital §2254 petitioners). As even the Director acknowledges, "serious instances of attorney misconduct" are relevant to the equitable tolling analysis. *See id.* (quoting *Christeson v. Roper*, 574 U.S. 373, 378 (2015)).

Moreover, the Director's interpretation of equitable tolling is plainly at odds with that of the Supreme Court. Proclaiming "Johnson never claims that his former counsel abandoned him[,]" the Director urges this Court to take a narrow view of equitable tolling and apply it only where counsel has ceased all work on behalf of the client. *See* Doc. 13 at 25–26. Although equitable tolling is only granted in extraordinary circumstances, the Supreme Court has construed those circumstances

flexibly, including when an attorney failed "to satisfy professional standards of care." *See Holland v. Florida*, 560 U.S. 631, 649 (2010); *see also Palacios v. Stephens*, 723 F.3d 600, 606 (5th Cir. 2013) ("[E]quitable tolling does not lend itself to bright-line rules[.]").

The Director further failed to acknowledge that Mr. Johnson's intellectual disability plays a role in this Court's determination of equitable tolling. *See, e.g., Fisher v. Johnson*, 174 F.3d 710, 715−16 (5th Cir. 1999). Although Mr. McCann never informed Mr. Johnson of the conflict or that Mr. McCann's actions were against Mr. Johnson's interest, Mr. Johnson requested new counsel after other inmates informed him of the conflict and his attendant rights. Mr. Johnson has brain damage and significant intellectual deficits but requested conflict-free counsel when he learned of Mr. McCann's ethical violations. Under the circumstances, Mr. Johnson diligently pursued his rights. The Motion to Dismiss avoids these considerations altogether.

## III. This Court may consider Mr. Johnson's evidence of intellectual disability and grant relief.

The Director predominantly argues that procedural barriers preclude the Court from holding a hearing and that this Court cannot overrule the state court's judgment. But in her plight to uphold the state court's decision as reasonable, the Director contests the validity of the expert reports and records Mr. Johnson provided to prove his intellectual disability diagnosis. The Motion to Dismiss further confirms—rather than repudiates—the need for an evidentiary hearing to resolve several factual disputes.

A.   **The Texas Court of Criminal Appeals (CCA) dismissed Mr. Johnson's *Atkins* claim without adjudicating the merits, and no deference is owed under § 2254(d).**

The CCA's decision was not an adjudication on the merits. Mr. Johnson presented substantial documentation supporting his *Atkins* claim under prevailing professional norms, but the CCA refused to authorize the claim to proceed to a merits determination and forestalled Mr. Johnson's ability to establish his right to relief at an evidentiary hearing. Mr. Johnson has qualifying IQ scores and neuropsychological testing that establish deficits in intellectual functioning, documentation of poor academic and life skills performance to establish deficits in adaptive functioning, and ample evidence these deficits manifested pre-18. Indeed, he presented sufficient evidence to establish a prima facie case of intellectual disability. *In re Johnson*, 935 F.3d at 295. But the state court failed to provide Mr. Johnson an adequate forum for proving his claim's merit and violated his right to due process. *See Wiley v. Epps*, 625 F.3d 199, 207 (5th Cir. 2010).

The Director has not disputed Mr. Johnson's argument that § 2254(d) does not apply to his *Atkins* claim. Instead, the Director presumes that § 2254(d) deference is owed, citing *Busby v. Davis*, 925 F.3d 699 (5th Cir. 2019). *Busby* is not controlling here. First, Busby did not challenge "the lack of a hearing" in the CCA and thus failed to show he was denied due process and the opportunity to adequately present his claim in state court. *See* 925 F.3d at 705. Second, unlike Mr. Johnson, Busby failed to establish even a prima facie case of intellectual disability. These factors distinguish Mr. Johnson's case from *Busby*.

**B.**     **Even if § 2254(d) applies, the CCA's decision was both legally and factually unreasonable.**

The Director assumes § 2254(d) applies to bar litigation of the *Atkins* claim in this Court, and more specifically asserts this Court should defer to the second state application, filed by Mr. McCann. Doc 13 at 39. Citing no authority for these propositions, the Director ignores the CCA's most recent dismissal of Mr. Johnson's third state application. To the extent that this Court considers the state court's rulings on Mr. Johnson's *Atkins* claim, it should look to its most recent decision. That decision, refusing to authorize the application for merits consideration, was both legally and factually unreasonable. The Motion to Dismiss notably fails to confront Mr. Johnson's bases for arguing that the CCA's decision was contrary to clearly established federal law.

The CCA has a long history of misapplying the prevailing professional norms to *Atkins* claims and this case is no different. *See Moore v. Texas*, 137 S. Ct. 1039, 1048 (2017); *Moore v. Texas*, 139 S. Ct. 666 (2019). The current medical framework requires a holistic analysis of intellectual functioning. Instead of relying solely on IQ scores, the DSM-5 instructs medical professionals to now consider neuropsychological testing in combination with adaptive functioning to determine whether an individual is intellectually disabled even if his IQ score falls above 70. Based on the current standards, Dr. Martell evaluated Mr. Johnson and diagnosed him as intellectually disabled. The CCA's dismissal of Mr. Johnson's considerable evidence of intellectual disability, and denial of a forum for Mr. Johnson to prove his allegations, is an

13

unreasonable application of *Moore*, which is fully applicable in the § 2254(d) context as that decision was issued prior to the filing of the claim in state court.

Moreover, the Director's arguments grossly misstate the record and at the very least validate Mr. Johnson's request for an evidentiary hearing. For instance, the Director argues that Mr. Johnson is seeking to eliminate the consideration of IQ scores in *Atkins* claims and establish a new standard under which petitioners with "genius level IQ scores"[6] may legally qualify as intellectually disabled. Doc. 13 at 40. In fact, Mr. Johnson seeks only to implement the correct medical standard, and requests a forum in which to establish both what that standard is and how significantly it differs from the pre-DSM-5 standard.

Throughout her pleadings, the Director never references the DSM-5 criteria for diagnosing intellectual disability. Under the DSM-IV, it was only "possible to diagnose Mental Retardation in individuals with IQs between 70 and 75 [or below] who exhibit significant deficits in adaptive behavior." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders Fourth Edition Text Revision* 41−42 (2000) (DSM-IV). At that time, the DSM did not allow medical professionals to rely on clinical judgment or any other measure when evaluating the first prong of a diagnosis. The DSM-5, however, substantially changed the diagnostic criteria in three significant ways.

First, the updated guidelines now instruct that "[c]linical training and judgment are *required* to interpret test results and assess intellectual performance,"

---

[6] The Director does not argue that Mr. Johnson has "genius level IQ scores."

14

meaning raw IQ scores now must be interpreted through the lens of the expert's clinical judgment. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders Fifth Edition* 37 (2013) (DSM-5) (emphasis added). Second, the DSM-5 recommends using neuropsychological testing in addition to traditional intelligence testing, because such tests are "more useful for understanding intellectual abilities than a single IQ score." *Id.* And third, the DSM-5 eliminated IQ cutoffs because IQ scores are "an approximation of conceptual functioning but may be insufficient to assess reasoning in real-life situations and mastery of practical tasks." *Id.* Thus, the DSM-5 explicitly recognizes that a person with an IQ score above 70 can be intellectually disabled if adaptive deficits are sufficiently severe. *Id.* The Director fails to acknowledge this significant development and instead continues to point to Mr. Johnson's pretrial IQ scores and suggest they preclude an intellectual disability diagnosis. This argument betrays a fundamental misunderstanding of the prevailing medical framework.

But the best evidence of the Director's confusion is her repeated argument that Dr. Watson's 2007 trial testimony that Mr. Johnson was not intellectually disabled under the DSM-IV is material evidence that Mr. Johnson is not intellectually disabled under the DSM-5—a conclusion soundly rebuffed by the medical consensus and Dr. Watson himself. The Director insists that Mr. Johnson is attempting to ignore his pretrial IQ scores, which the Director concedes are "reliable," and treats the IQ score

of 70 obtained in 2019 as the only IQ score that supports his diagnosis.[7] Doc. 13 at 41−45. But Dr. Martell clearly stated in his report that *all* of Mr. Johnson's IQ scores are relevant and *all* support a diagnosis of intellectual disability under the DSM-5.[8] Doc. 8, Ex. 1 at 23. For instance, Dr. Martell found that Mr. Johnson's score of 78 on the Stanford-Binet 5 places "Mr. Johnson in the clinical range for a diagnosis of Intellectual Disability under the DSM-5 criteria, particularly in light of his adaptive deficits[.]" *Id.* The Director is quick to point to Dr. Watson's testing as the best evidence of Mr. Johnson's pre-18 functioning but wholesale ignores that this testing is one of the bases for Dr. Martell's diagnosis of intellectual disability *and* that Dr. Watson no longer agrees that the testing he conducted precludes the diagnosis.

The Director is also silent on Mr. Johnson's neuropsychological testing, although the DSM-5 advises that cognitive profiles based on neuropsychological tests are "more useful for understanding intellectual abilities than a single IQ score." *See* DSM-5 at 37. Dr. Martell conducted a battery of neuropsychological measures and found significant evidence of intellectual deficits, including that Mr. Johnson is at or below the bottom 2-percent of the population regarding verbal learning and memory;

---

[7] The Director also repeatedly attacks Mr. Johnson's most recent IQ score because of "the high motivation to malinger." Doc. 13 at 48. But the Director has presented no evidence that Mr. Johnson has ever malingered on any testing. Drs. Watson, Hupp, and Martell all conducted effort testing and found that Mr. Johnson made good effort. Doc. 8, Ex. 1 at 11, 19; Ex. 4 at ¶4. To the extent the Director would like to challenge expert opinions on this point, the appropriate time to do so is at an evidentiary hearing.

[8] The Director further criticizes Dr. Martell for noting that an intelligence test Mr. Johnson took at age 14 was not a comprehensive measure of intellectual abilities, although the Director admits that Dr. Martell's evaluation of this test is correct based on the medical community's standards, as recognized by the Fifth Circuit. Doc. 13 at 42.

has significant impairments in language functioning, including a pronounced stutter, use of mispronounced or nonsense words, and "severe impairment in his ability to name common objects[;]" and his score in language functioning placed him "well below the lowest one-percentile" of the population. Doc. 8, Ex. 1 at 11−14. Based on his clinical judgment, Dr. Martell concluded that Mr. Johnson's IQ scores, in conjunction with the numerous impairments documented through neuropsychological testing, demonstrate that Mr. Johnson has significant deficits in intellectual functioning. *Id.* at 23. The Director wholly failed to address these facts.

When attacking Mr. Johnson's evidence of adaptive deficits, the Director makes contradictory arguments that that (1) Dr. Martell erred when he failed to use a standardized measure for adaptive deficits, which she asserts is required by the DSM-5, and (2) Dr. Hupp erred when he used a standardized measure, the Vineland, for adaptive deficits, which was inappropriate for a retrospective analysis; therefore, if Dr. Martell relied on Dr. Hupp's testing, Dr. Martell's conclusions are fatally flawed. Further, the Director misstates critical parts of the record, arguing that Dr. Watson testified that Mr. Johnson has no adaptive deficits. Doc. 13 at 45−47. The Director is wrong on all counts.

While the DSM-5 does recommend use of standardized measures for adaptive deficits, the text also recognizes that standardized testing may be "difficult or impossible" due to a "variety of factors[.]" DSM-5 at 37−38. The text specifically notes that adaptive functioning may be difficult to assess in a controlled setting, including prison, and in those situations, clinicians should seek "corroborative information

17

reflecting functioning outside those settings[.]" *Id.* at 38; *see also* American Association on Intellectual and Developmental Disabilities, *Intellectual Disability: Definition, Classification, and Systems of Support* 48 (11th ed. 2010) (recommending clinicians review school and medical records and interview witnesses when a standardized measure cannot be used). The Director attacked Dr. Martell's methodology by relying on the State's expert, Dr. Randall Price.[9] But Dr. Price is on the record in this case averring that standardized measures like the Vineland are *not* intended to be used in retrospective analyses. *Ex parte Johnson*, No. 73,600-02 (Tex. Crim. App. 2019), State's Exhibit 2 at 4) (Affidavit of J. Randall Price).

Dr. Martell followed the medical diagnostic guidelines and assessed Mr. Johnson's adaptive functioning through clinical interviews and record review. Retrospective analysis was required because Mr. Johnson is now well past the developmental period. Notably, however, retrospective analysis in this case may have been clearer than in other cases because Mr. Johnson was arrested shortly after turning 18. Thus, witnesses' recollections from before his arrest will necessarily refer to the developmental period.

Unable to refute Dr. Martell's adaptive functioning analysis, the Director resorts to suggesting Dr. Martell relied on Dr. Hupp's inappropriate Vineland data because Dr. Martell's report stated that as part of his assessment he "reviewed" Dr. Hupp's raw data. Doc. 13 at 46–47. This straw man argument is not supported

---

[9] The Director described Dr. Price as a "qualified, neutral expert." Doc. 13 at 47 n.3. Dr. Price was the State's hired expert to rebut Mr. Johnson's *Atkins* claim in state court. He has never evaluated Mr. Johnson.

anywhere in Dr. Martell's report. At the beginning of his report, Dr. Martell stated that he reviewed the "raw testing data" of Dr. Hupp, which included the IQ testing. Doc. 8, Ex. 1 at 2. Later in the report, Dr. Martell listed the information gleaned from Dr. Hupp's IQ testing, but did not discuss the Vineland or Dr. Hupp's other adaptive behavior assessments. *Id.* at 18−19. Discussions of Dr. Hupp are likewise absent from the 22 pages in which Dr. Martell examined Mr. Johnson's adaptive functioning with significant focus on Dr. Martell's witness interviews. *Id.* at 23−45. Thus, Dr. Martell did what the State's expert said should be done—he based his evaluation on clinical interviews. *See* Price Affidavit at 3. To the extent there is any question whether Dr. Martell relied on Dr. Hupp's Vineland data or reached accurate conclusions, those issues should be resolved at an evidentiary hearing.

Furthermore, as explained above, Dr. Watson *never* testified that Mr. Johnson does not suffer from adaptive deficits. At trial, Dr. Watson testified that he *did not evaluate* Mr. Johnson's adaptive functioning because he believed it was unnecessary due to the IQ scores. 31 RR 263. Dr. Watson again confirmed that he never assessed adaptive deficits in a declaration attached to Mr. Johnson's petition, and clearly stated that he could no longer testify that Mr. Johnson is not intellectually disabled. Doc. 8, Ex. 3 at ¶5. The Director has not acknowledged Dr. Watson's declaration.

Finally, the Director makes the conclusory argument that Mr. Johnson has presented no evidence that his deficits manifested during the developmental period. Doc. 13 at 48. The Director is again mistaken. Much of Mr. Johnson's intelligence testing was conducted pre-trial, when he was 18. Doc. 8, Ex. 1 at 17−18. The academic

scores and witness statements that support a finding of adaptive deficits *all* involve pre-18 functioning. *Id.* at 23−44. Mr. Johnson was arrested less than two weeks after his 18th birthday. The evidence collected by Dr. Martell, which encompasses Mr. Johnson's functioning before his arrest, is thus evidence that Mr. Johnson's intellectual disability manifested during the developmental period. *Id.* at 45.

The Director submits that the CCA's ruling was a reasonable interpretation of the facts but the Director's argument is disproved by the documentation provided. If this Court determines that it must apply § 2254(d) to the CCA's dismissal, then it must conclude that the CCA's ruling was unreasonable. At the very least, the arguments presented here demonstrate a factual dispute that can be resolved only through a hearing.

### C. *Pinholster* does not preclude this Court from considering Mr. Johnson's evidence.

The Director repeatedly tells this Court it cannot consider "new evidence" in support of Mr. Johnson's claim. Doc. 13 at 5, 38 (citing *Cullen v. Pinholster*, 563 U.S. 170 (2011)).[10] There are two important points the Director has omitted regarding *Pinholster*. First, *Pinholster* only applies to a federal court's consideration of whether a state court decision on the merits was unreasonable under 28 U.S.C. § 2254(d)(1). *See, e.g.*, *Smith v. Cain*, 708 F.3d 628, 635 (5th Cir. 2013). It does not apply when a federal court considers federal procedural rules or decides the merits of a claim after finding § 2254(d) has been satisfied. *See id.*; *see also Barrientes v. Johnson*, 221 F.3d

---

[10] Notably, the Director does not identify which evidence she alleges should be barred by *Pinholster*.

741, 768 (5th Cir. 2000). Second, even if this Court decides—after finding the procedural hurdles in § 2244 have been cleared—that § 2254(d) applies, all of the evidence Mr. Johnson presented to this Court in support of his diagnosis was also presented to the state court. The Director cites no authority for her proposition that evidence presented in state court cannot be considered by this Court.

## Conclusion and Prayer for Relief

For these reasons, Mr. Johnson requests that the Court find his successive petition satisfies the requirements of 28 U.S.C. § 2244(b)(2), grant an evidentiary hearing, *see* Doc. 9, find that he is intellectually disabled and exempt from execution pursuant to *Atkins* and the Eighth and Fourteenth Amendments to the constitution, and issue a writ of habeas corpus.

DATED: March 11, 2020

<div style="margin-left:40%">

Respectfully submitted,

JASON D. HAWKINS
Federal Public Defender
Northern District of Texas

*/s/ Jeremy Schepers*
Jeremy Schepers (24084578)
Supervisor, Capital Habeas Unit
Jessica Graf (TX 24080615)
Assistant Federal Defender
Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746
214-767-2886 (fax)
Jeremy_Schepers@fd.org
Jessica_Graf@fd.org

</div>

**Certificate of Service**

I certify that a true and correct copy of the foregoing Reply to Respondent's Motion to Dismiss has been served by CM/ECF upon counsel for Respondent on March 11, 2020, to:


Ellen Stewart-Klein
Office of the Attorney General
P.O. Box 12548
Capitol Station
Austin, TX 78711


_/s/ Jeremy Schepers_
Jeremy Schepers