**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

DEXTER JOHNSON, §
§
   Petitioner, §
VS. § CIVIL ACTION NO. 4:19-CV-3047
§
LORIE DAVIS, §
§
   Respondent. §

## <u>ORDER</u>

Petitioner Dexter Johnson has already litigated a federal habeas challenge to his Texas capital conviction and death sentence. Johnson seeks leave to file a successive federal habeas petition based on the question of whether intellectual disability precludes his execution. (Docket Entry No. 8). Johnson also moves for an evidentiary hearing. (Docket Entry No. 9). Respondent Lorie Davis has filed a motion to dismiss Johnson's petition without additional factual development. (Docket Entry No. 13).

At this stage of the proceedings, this Court has two duties: (1) decide whether Johnson is entitled to proceed with his successive petition and (2) examine the timeliness of Johnson's successive petition. Additional factual development relating to his federal representation is necessary before the Court can fairly adjudicate those issues. For the reasons discussed below, the Court **GRANTS** Johnson's motion for an evidentiary hearing **IN PART**. The Court **DENIES** Respondent's motion to dismiss **WITHOUT PREJUDICE** to reurging after the development of additional evidence.

## BACKGROUND

Courts have previously described the details of the crime that resulted in Johnson's death sentence. *See Johnson v. Stephens*, 617 F. App'x 293 (5th Cir. 2015); *Johnson v. Stephens*, 4:11-cv-

2466, Docket Entry No. 84 at 1-4; *Johnson v. State*, 2010 WL 359018, at *1 (Tex. Crim. App. 2010).

For the purposes of the issues needing adjudication at this stage, the Court provides the following summary of relevant facts. In doing so, the Court will also review developments in psychology and in the law that guide the issues present in this lawsuit.

## I. Trial

Johnson's capital conviction and death sentence arise from the murder of Maria "Sally" Aparece during the course of a robbery on June 18, 2006. Four years before Johnson's trial the Supreme Court had held in *Atkins v. Virginia*, 536 U.S. 303 (2002), that the execution of criminals who are intellectually disabled violates the Eighth Amendment.[1] The trial defense relied on expert testimony about various mental-health issues which Johnson suffered. The testimony, and most particularly that provided by neuropsychologist Dr. Dale Watson, specifically precluded any diagnosis of intellectual disability under the then-governing professional standards.[2]

On June 28, 2007, Johnson was sentenced to death. That same day, the trial court appointed Patrick F. McCann to represent Johnson in state habeas corpus proceedings.

After the state courts denied appellate and habeas remedies, the Court appointed McCann as

---

[1] At the time of the *Atkins* decision, the psychological community used the term "mental retardation" which it has replaced with the term "intellectual disability." *See Hall v. Florida*, 572 U.S. 701, 704 (2014).

[2] Dr. Watson assessed Johnson's IQ through two tests: the Stanford Binet Intelligence Scale, Fifth edition, and the Wechsler Adult Intelligence Scale, Third edition (WAIS-III). 31 RR 196. Applying a standard error of measurement and a principle called the Flynn Effect, Dr. Watson opined that Johnson's IQ was somewhere between 74 and 88. 31 RR 204. Dr. Watson testified that Johnson did not have obvious deficits in adaptive behavior. 31 RR 206. Dr. Watson testified that Johnson was not intellectually disabled. 31 RR 20.

counsel of record on July 30, 2010. (*Johnson v. Thaler*, 4:10-mc-318, Docket Entry No. 2).[3] At that time, federal courts frequently appointed an inmate's state habeas counsel with the understanding that an attorney's experience in state court would aid the preparation and litigation of a federal habeas petition.[4]

## II.    Developments in the Law and Psychology

On June 28, 2011, McCann filed a federal petition for a writ of habeas corpus on Johnson's behalf. (*Johnson v. Stephens*, 4:11-cv-2466, Docket Entry No. 1).  This Court has already extensively discussed various details of the representation provided by McCann.  *Johnson v. Stephens*, 4:11-cv-2466 (Docket Entry No. 84 at 2-4).  Three circumstances during the pendency of Johnson's petition give rise to the matters now before the Court.

### A.    *Martinez v. Ryan*

First, in *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court carved out a limited equitable exception to federal procedural default rules based on a state habeas attorney's legal representation.  *Martinez* provided a narrow remedy: forgiveness for the default of ineffective-assistance-of-trial-counsel claims when state habeas counsel deficiently failed to raise them.  *See Davila v. Davis*, ___ U.S.___, 137 S. Ct. 2058, 2062 (2017) (labeling the *Martinez* exception "narrow," "highly circumscribed," and available only in "limited circumstances").  *Martinez* posed

---

[3]    Federal law allows for the appointment of "one or more attorneys" in capital habeas cases.  18 U.S.C. § 3599(a)(2).  Johnson did not request that another attorney assist McCann in the litigation.

[4]    Under the heading "Continuity of Representation," the CJA Guide to Judiciary Policy stated, and still states, that "in the interest of justice and judicial and fiscal economy, unless precluded by a conflict of interest, presiding judicial officers are urged to continue the appointment of state post-conviction counsel, if qualified . . . when the case enters the federal system."  6 Guide to Judiciary Policy § 620.70.

a potential concern in this case: McCann represented Johnson in both state and federal court. An attorney cannot "be expected to argue his own ineffectiveness as state habeas counsel." *Clark v. Davis*, 850 F.3d 770, 773 (5th Cir. 2017). However, *Martinez* was not directly applicable as Johnson's initial petition did not raise any claim that trial counsel provided ineffective representation under *Strickland v. Washington*, 466 U.S. 668 (1984).

*Martinez* became a potential issue in the initial proceedings when, almost two years after filing the initial federal petition, McCann filed a motion on December 28, 2012, seeking to raise two new claims. McCann argued that he could litigate the new issues either by staying his federal action to allow exhaustion or by amending his federal petition. One of his new claims would have faulted trial counsel for not "present[ing] any evidence whatsoever of [his psychological and biological mental] impairments during the guilt innocence of the trial" even though counsel had prepared such evidence for the punishment phase. (*Johnson v. Stephens*, 4:11-cv-2466, Docket Entry No. 14 at 8). Johnson, however, did not suggest that *Martinez* would provide an avenue to federal consideration of any claim.

*Martinez* did not provide guidance on its influence in an ongoing federal habeas action.[5] With the possibility that *Martinez* could pose a concern, the Court ordered the parties to provide supplemental briefing. (*Johnson v. Stephens*, 4:11-cv-2466, Docket Entry No. 16). McCann "admit[ed] that he was remiss in not filing the new claims of ineffective assistance of counsel" and argued that *Martinez* would allow him to overcome any procedural bar (but asking for an extension

---

[5]     Subsequent circuit cases have encouraged the appointment of supplemental counsel or other remedial steps to give *Martinez* effect in active federal habeas cases. *See Speer v. Stephens*, 781 F.3d 784 (5th Cir. 2015); *Mendoza v. Stephens*, 783 F.3d 203 (5th Cir. 2015). The law before this Court entered judgment, however, did not advise the substitution of counsel. To date, no Supreme Court or Fifth Circuit case law has required a federal court to *sua sponte* remove federal counsel because of *Martinez*.

of *Martinez* because the state courts had prevented him from developing a *Strickland* claim). (*Johnson v. Stephens*, 4:11-cv-2466, Docket Entry No. 18 at 2). McCann did not ask for the substitution of counsel in order to give *Martinez* effect.[6] McCann remained the sole counsel of record until the State set an execution date years later.

## B. The DSM-5

Second, developments in the psychological community's understanding of intellectual disability provide the basis for this lawsuit. In May 2013, the American Psychiatric Association's (APA) published a revision of its diagnostic manual, the DSM-5. The DSM-5 significantly altered the manner in which clinicians view the relationship between IQ scores and intellectual disability. The DSM-5 repudiated previous over-reliance on IQ test scores: "'IQ test scores are approximations of conceptual functioning but may be insufficient to assess reasoning in real-life situations and mastery of practical tasks.'" *Hall v. Florida*, 572 U.S. 701, 721-22 (2014) (quoting DSM-5 at 37). Thus, "[t]he latest DSM-5 manual changed the diagnostic framework for intellectual disability. Higher IQ scores no longer bar a diagnosis of an intellectual disability." *In re Johnson*, 935 F.3d 284, 292 (5th Cir. 2019). McCann did not raise any issue relating to the DSM-5 during the pendency of Johnson's initial petition.

## C. Texas' *Atkins* Jurisprudence

Interplay between Supreme Court precedent and Texas law provides the third circumstance that influences the course of this lawsuit. When the Supreme Court issued *Atkins* in 2002, it left to "the States the task of developing appropriate ways to enforce the constitutional restriction upon their execution of sentences." *Atkins*, 536 U.S. at 317 (quotation omitted). As States interpreted this

---

[6] Around the same time, however, McCann requested the appointment of supplemental counsel in another case because of *Trevino*. *Martinez v. Stephens*, No. 4:13-cv-01994 (S.D. Tex).

responsibility, jurisdictions varied in their reliance on the standards developed by professional organizations. The Texas State Legislature did not initially enact any statute that gave effect to the *Atkins* decision, leaving its interpretation to the courts. In *Ex parte Briseno*, 135 S.W.3d 1 (Tex. Crim. App. 2004), the Court of Criminal Appeals decided that Texas would adopt the definition of intellectual disability in the 1992 edition of a certain diagnostic manual, but would temper that evaluation with judicially created factors lacking any foundation in psychological science.

The flow of *Atkins* cases nationwide turned when the Supreme Court relied on the most recent versions of leading diagnostic manuals–including the DSM-5–in *Hall v. Florida*, 572 U.S. 701(2014). In *Hall*, the Supreme Court relied on the DSM-5 to recognize that, while not "unhelpful" and "of considerable significance," IQ scores are not the only consideration in an *Atkins* inquiry. *Hall*, 572 U.S. at 723. Simply, "intellectual disability is a condition, not a number." *Id*. *Hall* explicitly held that the *Atkins* determination must be "informed by the medical community's diagnostic framework." 572 U.S. at 721. The Supreme Court would continue to emphasize the importance of relying on the current standards relied on by professional mental-health organizations. *See Brumfield v. Cain*, 576 U.S. 305, 308 (2015).

*Hall*, however, did not initially bring about a sea change in Texas' approach to *Atkins* cases. As the Supreme Court brought *Atkins* jurisprudence in sync with the medical community, the Texas courts continued to apply outdated standards and judge-made rules. *See Ex Parte Moore*, 470 S.W.3d 481, 486 (Tex. Crim. App. 2015) (refusing to adopt a recommendation that habeas relief be granted when the lower court relied on the DSM-5); *Ex parte Cathey*, 451 S.W.3d 1, 10 (Tex. Crim. App. 2014) (mentioning, but not relying on, the DSM-5 standards). Texas' approach did not face scrutiny until 2017 when the Supreme Court threw out the *Briseno* standards in *Moore v. Texas*, ___ U.S. ___, 137 S. Ct. 1039, 1051 (2017). In 2018 the Court of Criminal Appeals finally "conclude[d]

that the DSM-5 should control [its] approach to resolving the issue of intellectual disability." *Ex parte Moore*, 548 S.W.3d 552, 560 (Tex. Crim. App. 2018). Even then, the Supreme Court had to rectify Texas' failure to adhere closely to the professional judgment of the psychological profession. *See Moore v. Texas*, ___ U.S. ___, 139 S. Ct. 666 (2019).

In sum, McCann's representation in both state and federal courts, the evolution of psychological standards to assess intellectual disability, and legal responses to the new DSM-5 standards provide a backdrop to the matters now before the Court.

## III.    Litigation Leading to Johnson's *Atkins* Claim

### A.    Federal Litigation of Johnson's Initial Federal Petition

Respondent filed an answer to Johnson's petition on February 23, 2012. (*Johnson v. Stephens*, 4:11-cv-2466, Docket Entry No. 11). On December 28, 2012, Johnson moved to amend or abate his federal petition to include new claims. (*Johnson v. Stephens*, 4:11-cv-2466, Docket Entry No. 14). When the DSM-5 was published on May 18, 2013, the parties were still briefing the motion to amend or abate.

On August 13, 2013, the Court entered a Memorandum and Order that both denied the motion to alter and amend and also denied habeas relief on all but one claim. (*Johnson v. Stephens*, 4:11-cv-2466, Docket Entry No. 19). The Court refused to abate the proceedings because Johnson "knew about the putative claims during state habeas review" but "did not advance them until December 28, 2012," he did "not show good cause for failing to raise his unexhausted claims until federal review," and "Texas would apply its procedural law to prohibit the filing of a successive state application." (*Johnson v. Stephens*, 4:11-cv-2466, Docket Entry No. 19 at 12-13). The Court denied his request to amend because "[r]estarting the process at th[at] stage would needlessly insert delay into the proceedings," "Johnson would face high procedural obstructions to federal habeas review

7

and relief" such as the exhaustion and procedural bar doctrines, and Johnson provided little information about the claim he wished to raise. (*Johnson v. Stephens*, 4:11-cv-2466, Docket Entry No. 19 at 13-15).

McCann litigated Johnson's case in a manner that delayed issuing final judgment. Johnson unsuccessfully moved to reconsider the Court's August 13, 2013 Order. (*Johnson v. Stephens*, 4:11-cv-2466, Docket Entry No. 20). Johnson then filed an interlocutory appeal. (*Johnson v. Stephens*, 4:11-cv-2466, Docket Entry No. 25; *Johnson v. Stephens*, No. 13-70032). With that litigation, the Court did not enter a final judgment until June 25, 2014. (*Johnson v. Stephens*, 4:11-cv-2466, Docket Entry No. 32).

Johnson continued to litigate issues from his federal petition even after the Fifth Circuit denied his appeal, *Johnson v. Stephens*, 617 F. App'x 293 (5th Cir. 2015), and the Supreme Court denied certiorari review, *Johnson v. Stephens*, ___ U.S. ___, 136 S. Ct. 980 (2016). In 2017, Johnson specifically asked to reopen the judgment because the Court had allegedly been incorrect in denying leave to amend. Johnson also wished to litigate issues relating to his mental health. Specifically, Johnson argued for an extension of the *Atkins* decision to offenders suffering from other psychological conditions including schizophrenia. The Court denied the motion for a new trial and a subsequent motion for reconsideration. (*Johnson v. Stephens*, 4:11-cv-2466, Docket Entry Nos. 49, 51). The Fifth Circuit affirmed on August 24, 2018. *Johnson v. Davis*, 746 F. App'x 375 (5th Cir. 2018). In total, McCann actively litigated issues relating to Johnson's initial habeas petition for over eight years.

### B.    Appointment of New Counsel

The changes brought about by the DSM-5 and *Martinez* came together after December 6, 2018, when the State of Texas set Johnson's execution for May 2, 2019. As the execution neared,

Johnson wrote to the Court and expressed concerns about McCann's representation. (*Johnson v. Stephens*, 4:11-cv-2466, Docket Entry No. 65). To preserve Johnson's rights, the Court appointed Jeremy Schepers of the Office of the Federal Defender, Northern District of Texas as co-counsel with the specific duty to "explore whether Johnson can establish cause for the procedural default of any ineffective-assistance-of-trial-counsel claims pursuant to *Martinez*, whether those claims merit relief, and whether a viable vehicle exists for raising those claims in federal court." (*Johnson v. Stephens*, 4:11-cv-2466, Docket Entry No. 70 at 3).[7]

### C.    Second State Habeas Application

As the execution date approached, both sets of attorneys pursued different litigation strategies. McCann secured the services of a mental-health expert who evaluated Johnson under the DSM-5 standards. With the DSM-5's changes, Dr. Greg Hupp departed from prior opinions and diagnosed Johnson with intellectual disability. Specifically, Dr. Hupp found that Johnson had a Full Scale IQ score of 70 and had significant deficits in adaptive functioning during his formative years. McCann also acquired affidavits from family members and school records to verify Johnson's adaptive deficits.

Unlike federal law, Texas state practice does not impose time limits on litigating new constitutional claims. *See* Tex. Code Crim. Pro. art. § 11.071 § 5(a). McCann filed a successive state habeas application raising an *Atkins* claim on April 11, 2019. *Ex parte Johnson*, WR-73,600-02

---

[7]    In doing so, the Court followed the Fifth Circuit's suggestion in similar cases that the appointment of supplemental counsel would allow for "determining whether [an inmate] has additional habeas claims that ought to have been brought" while maintaining "the rich resource of the counsel who has been through the state habeas process and who has prosecuted the federal habeas action." *Speer*, 781 F.3d at 786; *see also Mendoza*, 783 F.3d at 203 (remanding for the appointment of supplemental counsel).

(Docket Entry No. 11, Exhibit 2).[8]  McCann requested that the Texas courts stay his execution to allow litigation of his *Atkins* claim.  The Texas Court of Criminal Appeals denied leave to proceed on his second habeas application.  *Ex parte Johnson*, N0. WR-73,600-02, 2019 WL 1915204 (Tex. Crim. App. 2019).

Despite this Court's specific charge to focus on finding unraised *Strickland* claims possibly made available for federal review under *Martinez*, Johnson's current attorneys did not identify any *Strickland* issue needing development.  Instead, Johnson's attorneys moved to stay the execution date based on McCann's appointment.  (*Johnson v. Stephens*, 4:11-cv-2466, Docket Entry Nos. 76, 77).[9]  With four days remaining, this Court stayed Johnson's execution date under 28 U.S.C. § 2251(a)(3) which allows for a stay of execution for ninety days after the appointment of counsel.  (Docket Entry No. 84).  McCann later voluntarily withdrew from the case, removing the earlier concerns about the relationship between his attorneys.  (*Johnson v. Stephens*, 4:11-cv-2466, Docket Entry No. 89).

### D.    Third State Habeas Application

The State of Texas set a new execution date of August 15, 2019.  On August 6, 2019, Johnson filed a third state habeas application.  Among other issues, Johnson argued that, because he is intellectually disabled, his execution would violate the Eighth and Fourteenth Amendments.  Johnson supported his third habeas application with a report from Dr. Daniel A. Martell.  Dr. Martell examined Johnson on June 13 and 14, 2019.  Dr. Martell did not perform any IQ testing, but relied on Dr. Hupp's evaluation which resulted in an IQ score of 70.  Dr. Martell did not assess Johnson's

---

[8]     Attorney Mandy Miller assisted McCann in filing Johnson's second state habeas application.

[9]     Johnson's current attorneys have not tried to litigate any *Strickland* claim in this Court that should have been, but was not, raised in state court.

adaptive behavior through testing instruments. By interviewing Johnson and reviewing affidavits from family members, Dr. Martell concluded that Johnson met *Atkins'* second prong. Dr. Martell opined that Johnson suffered from deficits before age 18.

On August 13, 2019, the Court of Criminal Appeals found that Johnson's third application failed to meet the requirements of Tex. Code Crim. Pro. art. 11.071, §5 for successive habeas proceedings. *See Ex parte Johnson*, WR-73,600-03, 2019 WL 3812803 (Tex. Crim. App. 2019).[10]

### E.     Johnson's Current Lawsuit

Johnson litigated in federal court concurrent to his third state habeas application. On June 24, 2019, Johnson filed a Motion for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b). (*Johnson v. Stephens*, 4:11-cv-2466, Docket Entry No. 95). Johnson's 2019 Rule 60(b) motion relied on *Martinez* to argue that McCann's appointment in state and federal court provided an extraordinary circumstance requiring the reopening of the judgment. Johnson also moved to stay his execution on that basis. (*Johnson v. Stephens*, 4:11-cv-2466, Docket Entry No. 96).

On August 12, 2019, the Court denied Johnson's 2019 Rule 60(b) motion and denied his motion to stay his execution. The Court noted that "[a]s a general premise, Johnson's Rule 60(b) motion is correct: McCann's representation created a 'potential conflict of interest.'" (*Johnson v. Stephens*, 4:11-cv-2466, Docket Entry No. 100 at 15). That conflict, however, was limited to the"narrow" and "highly circumscribed" nature of *Martinez*. *Davila v. Davis*, ___ U.S.____, 137 S. Ct. 2058, 2065-66 (2017). "Johnson's Rule 60(b) motion . . . [did] not describe what

---

[10]     Johnson also moved for the Court of Criminal Appeals to strike as unauthorized the earlier successive habeas application filed by McCann. *See Ex parte Johnson*, WR-73,600-02, 2019 WL 3812803 (Tex. Crim. App. 2019). The Court of Criminal Appeals denied that motion.

ineffective-assistance-of-trial counsel claims conflict-free habeas counsel would have raised.." (*Johnson v. Stephens*, 4:11-cv-2466, Docket Entry No. 95 at 14). Johnson had hinted at one *Strickland* issue that merited investigation but "ha[d] not provided any basis to decide whether McCann's failure to advance that claim was error under *Martinez*: he does not show the *Strickland* claim is substantial and that McCann was ineffective for not advancing it." (*Johnson v. Stephens*, 4:11-cv-2466, Docket Entry No. 100 at 17).

The Fifth Circuit affirmed and agreed that any allegations of inept lawyering by McCann were insufficient to provide for Rule 60(b) relief. The Fifth Circuit affirmed "because Johnson failed to brief any waived claims sufficient to allow the district court to determine whether any of them had some merit." *In re Johnson*, 935 F.3d 284, 291 (5th Cir. 2019).

At the same time, Johnson separately moved for the Fifth Circuit to grant him leave to file a successive federal habeas petition. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes restrictions on a prisoner's ability to file a second or successive habeas petition. *See* 28 U.S.C. § 2244. Among other limitations, an inmate must first receive permission from a circuit court before a district court may consider successive habeas claims. A circuit court may not authorize a filing unless the inmate makes a prima facie demonstration that he can comply with the AEDPA's requirements:

> (b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
>
> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless–
>
>> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously

unavailable; or

(B)(I) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2)(B).

Johnson's pleadings in the Fifth Circuit relied on Section 2244(b)(2)(A) which required three showings: (1) the claim was not presented in a prior petition; (2) the inmate relied on a new rule of constitutional law that the Supreme Court had made retroactive; and (3) he made a prima facie showing that his claim had merit. Respondent conceded that Johnson had not presented his *Atkins* claim in a previous petition. *See In re Johnson*, 935 F.3d 284, 292 (5th Cir. 2019). Relying on *In re Cathey*, 857 F.3d 221 (2017), the Fifth Circuit found that the DSM-5's "significant change . . . in the medical methodology for evaluating the relevant disabilities and . . . courts' recognition of those changes" made Johnson's *Atkins* claim previously unavailable to him. *Johnson*, 935 F.3d at 292-93. Primarily based on Dr. Martell's report, the Fifth Circuit found that Johnson made a prima facie showing that his claim has merit. *Johnson*, 935 F.3d at 294. The Fifth Circuit authorized Johnson's petition to proceed and stayed Johnson's execution.

On August 15, 2019, Johnson filed his successive habeas petition in this Court. (Docket Entry No. 1). Johnson amended his successive petition on November 12, 2019, (Docket Entry No. 8), and moved for an evidentiary hearing, (Docket Entry No. 9). Respondent has moved to dismiss the successive petition. (Docket Entry No. 13).

## THIS COURT'S ROLE

The Fifth Circuit tentatively authorized Johnson to proceed with a successive federal petition, but that decision does not bind this Court. *See In re Swearingen*, 556 F.3d 344, 349 (5th Cir. 2009) ("We reiterate that this grant is tentative in that the district court must dismiss the motion that we have allowed the applicant to file, without reaching the merits, if the court finds that the movant has not satisfied the § 2244(b)(2) requirements for the filing of such a motion."); *see also Jordan v. Secretary, Dept. of Corrections*, 485 F.3d 1351, 1358 (11th Cir. 2007) (stating that it makes "no sense for the district court to treat [that] *prima facie* decision as something more than it is or to mine [the circuit court's] order for factual ore to be assayed. The district court is to decide the § 2244(b)(1) & (2) issues fresh, or in the legal vernacular, *de novo*."); *Brown v. Lensing*, 171 F.3d 1031, 1032 (5th Cir. 1999) ("[T]he trial court must make its own determination that the statutory prerequisites are satisfied."). This Court must determine if the pending petition conclusively meets AEDPA's second or successive motion requirements.

The burden of showing statutory compliance rests on the petitioner. *See Moore v. Dretke*, 369 F.3d 844, 845 n.1 (5th Cir. 2004) ("The applicant bears the burden of demonstrating that the petition does in fact comply with the statute, and the district court shall dismiss the petition unless that showing is made."); 28 U.S.C. § 2244(b)(4) ("A district court *shall* dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed *unless the applicant shows that the claim satisfies the requirements of this section*.") (emphasis added). If a petitioner fails to meet his burden, this Court is "required to dismiss" the petition. *Tyler*, 533 U.S. at 667.

In addition to the successive petition standards, an inmate must also comply with AEDPA's other requirements. *See In re Johnson*, 325 F. App'x 337, 340 (5th Cir. 2009) (finding that "a

successive federal petition based on mental retardation claims is subject to § 2244(d)'s one-year statute of limitations"). In particular, AEDPA established a one-year limitations period running from the latest of:

> (A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Johnson argues that the limitations period began to run when the factual predicate of his *Atkins* claim could have been discovered through the exercise of due diligence, which in this case was the May 18, 2013, publication of the DSM-5. *See* 28 U.S.C. § 2244(d)(1)(D).

## ANALYSIS

Before his successive action will continue, Johnson must comply with AEDPA's statutory requirements for successive habeas proceedings by showing that (1) he did not raise his claim in a prior petition; (2) he "relies on a new rule of constitutional law . . . that was previously unavailable." 28 U.S.C. § 2244(b)(2)(B); and (3) he filed in a timely manner. Respondent concedes that Johnson's *Atkins* claim was not presented in a prior petition. (Docket Entry No. 13 at 30). Respondent moves to dismiss this case on two grounds. First, Respondent argues that this Court should dismiss the petition as successive because (1) the Fifth Circuit incorrectly found that Johnson's *Atkins* claim was not available until the DSM-5 was published; (2) McCann was not ineffective in failing to raise an *Atkins* claim; and (3) the state court dismissals of Johnson's *Atkins* claims require deference under

the relitigation bar of 28 U.S.C. § 2254(d).  Second, Respondent argues that Johnson's successive

petition does not comply with AEDPA's one-year limitations period.  *See* 28 U.S.C. § 2244(d).

The Court will first discuss whether Johnson has passed AEDPA's bar on successive habeas

petitions before turning to the question of whether he has filed in a timely manner.  As the Court will

discuss below, McCann's representation is the lynchpin to the remaining issues before Johnson can

proceed with his successive petition.

## I.    Successive Petition Requirements

Johnson claims that he has met the requirements of Section 2244(b)(2)(A) because *Atkins*

is a new, retroactive rule of constitutional law that was previously unavailable.  Courts have agreed

that "*Atkins* created a new rule of constitutional law . . . made retroactive to cases on collateral

review by the Supreme Court."  *In re Campbell*, 750 F.3d 523, 530 (5th Cir. 2014); *see also In re*

*Wood*, 648 F. App'x 388, 391 (5th Cir. 2016).  To proceed in this successive litigation, Johnson must

show that *Atkins*' new rule was unavailable to him.

### A.    Publication of the DSM-5

The Supreme Court decided *Atkins* well before the trial in this case.  Johnson, nevertheless,

argues that *Atkins* was unavailable because the DSM-5 fundamentally changed the framework for

intellectual disability.  The Fifth Circuit tentatively approved successive proceedings because it had

previously decided in *In re Cathey*, 857 F.3d 221 (5th Cir. 2017), "that it is correct to equate legal

availability with changes in the standards for psychiatric evaluation of the key intellectual disability

factual issues raised by *Atkins*."  *In re Johnson*, 935 F.3d 284, 293-94 (5th Cir. 2019).  Respondent

disputes the reasoning behind the Fifth Circuit's reliance on *Cathey* to justify the filing of successive

proceedings.  Respondent asserts "that *Cathey* was effectively overruled by the Supreme Court in

*Shoop v. Hill*, 139 S. Ct. 504, 507-08 (Jan. 7, 2019) (per curiam)."  (Docket Entry No. 13 at 31).  The

Court does not need to discuss this argument because the Fifth Circuit conclusively held that "*Shoop . . . did not overrule Cathey . . . .*" *Johnson*, 935 F.3d at 293. This Court lacks authority to overrule the Fifth Circuit on that legal determination. The Court will consider Johnson's *Atkins* claim to be previously unavailable until the publication of the DSM-5 in May 2013.

### B. McCann's Representation and Availability

Respondent argues that, even if counting the publication of the DSM-5 as the starting point for availability, Johnson had opportunities to litigate that claim well before he filed his successive petition. This Court had not yet issued a final judgment when the DSM-5 was published on May 18, 2013. The Court denied summary judgment on August 19, 2013, on all but one claim. (Docket Entry No. 19). The Court ordered additional briefing and denied Johnson's petition on June 25, 2014. (Docket Entry No. 31). Over a year transpired between the publication of the DSM-5 and the issuance of judgment in this case. According to Respondent, Johnson should have sought leave to amend his federal petition with an *Atkins* claim during the first round of habeas proceedings.

When "a new constitutional rule . . . was announced while a petition was pending," the Fifth Circuit asks whether it was "'feasible to amend [the inmate's] pending petition to include the new claim.'" *In re Wood*, 648 F. App'x 388, 391 (5th Cir. 2016) (quoting *In re Everett*, 797 F.3d 1282, 1288 (11th Cir. 2015)).[11] In other words, the Fifth Circuit's "feasibility" requirement asks whether the petitioner should have sought "amendment of his federal petition, stay of federal proceedings, and the pursuit of his *Atkins* claim in state court." *Wood*, 648 F. App'x at 392. In doing so, the Fifth Circuit has "essentially adopted a rebuttable presumption that a new rule of constitutional law was

---

[11] Before adopting the feasibility standard, the Fifth Circuit questioned whether there "may be room for debate as to whether, while a petitioner is this far along in his initial petition and waiting a decision, he should be required to add a freshly minted claim to it . . . ." *Leal Garcia v. Quarterman*, 573 F.3d 214, 223 n.47 (5th Cir. 2009).

previously available if published by the time a district court ruled on a petitioner's initial habeas petition." *Cathey*, 857 F.3d at 229.

Johnson makes three arguments why it was not feasible to amend his petition. First, Johnson argues that his attorney was not put on notice of the DSM-5 until it was first mentioned in a court opinion. (Docket Entry No. 8 at 14-15). Pointing to the Fifth Circuit's first mention of the DSM-5 standards on August 2, 2013, in *Hernandez v. Stephens*, 537 F. App'x 531 (5th Cir. 2013), Johnson argues that, "[i]t is not reasonable to expect" that Johnson would try to amend his federal petition in the "seventeen days"[12] before the Court issued its first memorandum and order in this case. (Docket Entry No. 8 at 15). Courts, however, have generally gauged the availability of a new claim from the emergence of the new rule, not its citation in legal authority. *See In re Sparks*, 944 F.3d 572, 576 (5th Cir. 2019) (calculating the availability of an *Atkins* claim from the publication of the DSM-5); *In re Soliz*, 938 F.3d 200, 204 (5th Cir. 2019) (same). Johnson does not describe why the new DSM-5 standards were available to the court and parties in *Hernandez*, but not in his own case. Johnson's first argument regarding feasibility, however, raises the question of what duty an attorney has to keep abreast of such developments, which is conditioned by both the individual facts of the case and the state of legal precedent.

Second, Johnson argues that it was not feasible to raise his *Atkins* claim because of when the DSM-5 publication happened in relation to the litigation in his own case. The DSM-5 publication came "fifteen months after the State filed its answer" and "ten months after Mr. Johnson replied."

---

[12] The Fifth Circuit appears to have misunderstood this argument when it commented that "Johnson also argues that although the DSM-5 was published before his habeas petition was denied for the first time in federal court, the DSM-5 was published only 17 days before the denial, which renders his claim not feasible as an amendment to his first petition." *Johnson*, 935 F.3d at 293.

(Docket Entry No. 8 at 14). At that point, the parties were litigating Johnson's request to amend the petition on other grounds. A few months later, the Court would deny amendment at that "late date" for several reasons, including that "[r]estarting the process at [that]stage would needlessly insert delay into the proceedings" and "Johnson would face high procedural obstructions to federal habeas review and relief" such as the "exhaustion and procedural bar doctrines." *Johnson v. Stephens*, 4:11-cv-2466 (Docket Entry No. 19 at 13-15). This Court's order disallowing amendment, issued only months after the DSM-5 was published, could discourage an attorney from attempting to insert an *Atkins* claim into the proceedings.

Importantly, the landscape of Texas *Atkins* jurisprudence at that stage may not have favored allowing an amendment of Johnson's petition based on the DSM-5. Even with the DSM-5's new standards, an attorney would face daunting procedural hurdles in federal court such as the exhaustion doctrine which would encourage a return to state court, but to a state court which would not consider the new psychological standards. Only with maturation of *Atkins* jurisprudence would the link between the constitutional protection and medical standards provide an inmate such as Johnson a viable ground for relief. Given the emphasis of the Texas courts on stale standards and non-clinical concerns, an attorney at that time might have not felt urgency to develop a claim based on progressing standards. Accordingly, while the DSM-5 made an *Atkins* claim based on its standards theoretically available, an attorney at that point in time may not have felt that it was feasible to raise a viable claim based on its revised standards. Thus, at its core the feasibility of raising the new *Atkins* claim during the initial habeas action turns on Johnson's third argument: whether McCann should have raised a claim during the pendency of the initial proceedings.

At this stage, the record does not contain any information about why McCann did not seek to advance an *Atkins* claim after the DSM-5's publication. The Fifth Circuit has suggested that an

19

*Atkins* claim may be previously unavailable when a petitioner's "representation in the initial federal habeas proceedings was so deficient as to render the *Atkins* claim functionally unavailable." *Wood*, 648 F. App'x at 392. Johnson argues that McCann's representation made his *Atkins* claim "functionally unavailable." (Docket Entry No. 16 at 8). As the Court will describe with respect to Respondent's equitable tolling argument, the Court needs more information about McCann's representation before finding that the *Atkins* claim was previously unavailable

## C.    Deference to State Court Decisions

Johnson twice unsuccessfully tried to litigate habeas applications based on the DSM-5's standards. The Texas Court of Criminal Appeals dismissed both pleadings under its abuse-of-the-writ doctrine. In some cases, such a dismissal may amount to an adjudication on the merits. *See Garcia v. Stephens*, 757 F.3d 220, 225 (5th Cir. 2014); *Ladd v. Stephens*, 748 F.3d 637, 641 n.10 (5th Cir. 2014); *Rivera v. Quarterman*, 505 F.3d 349, 359-60 (5th Cir. 2007). Respondent argues that the Court must dismiss the case because deference under Section 2254(d) precludes relief on the merits of Johnson's *Atkins* claim.

Section 2254(d) subjects state court decisions to "heightened deference" but that "deference does not imply abandonment or abdication of judicial review." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The Fifth Circuit held in *In re Cathey* that "the state court findings concerning the *Atkins* claim are wholly irrelevant to our inquiry as to whether [the petitioner] has made a prima facie showing of entitlement to proceed with his federal habeas application, which is an inquiry distinct from the burden that [the petitioner] must bear in proving his claim in the district court." 857 F.3d at 236 (alteration in original). Other circuits have likewise held that "while [an inmate] must ultimately show that his sentence violated 'clearly established Federal law, as determined by the Supreme Court of the United States' to win habeas relief, 28 U.S.C. § 2254(d)(1), that language is

absent from § 2244(b)(3)(C), and thus he need not meet that demanding requirement . . . to authorize the district court merely to consider his second or successive habeas petition." *In re Harrell*, 2016 WL 4708184, at *2 (6th Cir. 2016); *see also Quezada v. Smith*, 624 F.3d 514, 521 (2d Cir. 2010). Other circuits do not transpose the relitigation bar into the review of when a successive petition should be filed because Section 2254 is limited to when a court "may *issue* a writ of habeas corpus." *Queszada*, 624 F.3d at 521 (citing 28 U.S.C. § 2254(d)(1)). While the relitigation bar may later define this Court's review of Johnson's *Atkins* claim, it is not a consideration at this stage of the proceedings.

### D. Conclusion of Successive Petition Review

Johnson has provided sufficient evidence warranting successive proceedings. While trial testimony explained that Johnson was not intellectually disabled, his expert relied on standard superceded by the DSM-5. Based on Dr. Hupp's testing, two experts have concluded that Johnson's score of 70 on the WAIS-IV qualify him for a diagnosis of intellectual disability. The experts have also concluded that Johnson exhibits deficits in all three domains of adaptive functioning. Finally, the experts opine that the onset of Johnson's disability was during the developmental period. Johnson's expert at trial has also withdrawn his opinion that Johnson is not intellectually disabled.

Respondent identifies various concerns about the veracity of the experts' conclusions. Future proceedings may flesh out whether Johnson is indeed entitled to *Atkins* relief. However, the Court finds that the evidence supporting Johnson's successive petition is sufficient to survive Respondent's motion to dismiss on that ground. The Court, however, requires more information about McCann's representation before deciding the question of whether his *Atkins* claim was previously unavailable.

## II. Timeliness

Under some circumstances, AEDPA requires an inmate to raise his claim within one year of

"the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). The Fifth Circuit recognized that "[t]he date that factual predicate became available was on May 18, 2013, with the publication of the DSM-5." *Johnson*, 935 F.3d at 296. Johnson filed his *Atkins* claim many years later. The Court can only reach the merits of Johnson's *Atkins* claim if he can show equitable tolling forgives a strict application of the AEDPA limitations period.

"Equitable tolling is permissible only in 'rare and exceptional circumstances.'" *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (quoting *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998)). "To obtain the benefit of equitable tolling, [an inmate] must establish that (1) he pursued habeas relief with 'reasonable diligence', and (2) some 'extraordinary circumstances' stood in his way and 'prevented' timely filing." *Palacios v. Stephens*, 723 F.3d 600, 604 (5th Cir. 2013) (quoting *Manning v. Epps*, 688 F.3d 177, 183 (5th Cir. 2012)); *see also Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Both criteria must be satisfied, and a petitioner seeking application of the doctrine bears the burden of showing that it should apply to him. *See Lawrence*, 549 U.S. at 336.

"[P]rofessional misconduct" by an attorney may constitute an extraordinary circumstance warranting equitable tolling if the misconduct is not a "garden variety claim of excusable neglect," but is "egregious behavior" equivalent to abandonment. *See Holland*, 560 U.S. at 649-53; *see also Maples v. Thomas*, 565 U.S. 266, 283 (2012). The parties, however, disagree sharply about McCann's role in the failure to raise an *Atkins* claim in a timely manner. Johnson argues that McCann's "ineffectiveness and flagrant misconduct" warrants equitable tolling. (Docket Entry No.

8 at 32).[13]  Throughout his pleadings, Johnson repeatedly and vigorously describes McCann's representation as being conflicted because of *Martinez*.  *Martinez* "did not create a new right to conflict-free counsel on collateral review" but only provided "remedial relief to procedural bars standing in the way of presenting defaulted claims in federal courts."  *Beatty v. Davis*, 755 F. App'x 343, 349 (5th Cir. 2018); *see also Johnson v. Warden*, 738 F. App'x 1003, 1005–06 (11th Cir. 2018) ("We have consistently rejected the argument, however, that *Martinez* provides a basis for equitable tolling of the statute of limitations.  We have also rejected the argument that we should broaden the equitable reasoning behind *Martinez* because it would ignore the Supreme Court's statement that *Martinez* created only a narrow exception to the procedural default doctrine." (citations omitted)).  The Fifth Circuit has defined the use of the term "conflict" in the *Martinez* context: "conflicted only in the sense that every lawyer charged to examine the performance of counsel is conflicted in that task when the performance is his own."  *Speer v. Stephens*, 781 F.3d 784, 785 (5th Cir. 2015).

Possibly recognizing that the law has not read *Martinez* as creating a general rule of conflict, Johnson argues that "McCann acted to protect his own best interest by shielding himself from meaningful inquiry into his ineffectiveness as Mr. Johnson's state habeas counsel . . . ."  (Docket Entry No. 9 at 7).  At its core, Johnson argues that McCann "failed to communicate with Mr. Johnson, failed to properly investigate the case, and failed to maintain a proper case file."  (Docket Entry No. 9 at 7).  Apparently, Johnson sees these factors as tainting McCann's relationship in a way that raises his failure to litigate an *Atkins* claim above the level of mere neglect.

---

[13]    Johnson also argues that his intellectual disability itself warrants equitable tolling. (Docket Entry No. 8 at 32).  The law Johnson cites, however, applies to *pro se* inmates who suffer periods of mental incompetency.  *See Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999).  When an attorney represents an intellectually deficient inmate the concern is ineffective assistance, not clinical diagnoses of impairment.

Respondent, in turn, emphasizes that "Johnson had over a year to seek to amend his federal habeas petition. Yet Johnson did not seek to amend his petition at that time." (Docket Entry No. 13 at 21). Respondent encourages the Court not to look at what McCann did or should have done. In that context, Respondent argues that McCann was merely neglectful and "'mere attorney error or neglect is not an extraordinary circumstance such that equitable tolling is justified.'" (Docket Entry No. 13 at 23) (quoting *United States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002)).

"Tolling based on counsel's failure to satisfy AEDPA's statute of limitations is available only for "'serious instances of attorney misconduct.'" *Christeson v. Roper*, 574 U.S. 373, 378 (2015) (quoting *Holland*, 560 U.S. at 651-52). The parties present different interpretations of the choices McCann made, the things that he did not do, and his general level of representation. On one hand, it is clear that McCann did not pursue an *Atkins* claim for years after the publication of the DSM-5. On the other hand, nothing in the record provides information on why McCann did what he did. McCann actively litigated various other challenges and raised unique arguments. McCann litigated aggressively in federal court, including seeking novel avenues of relief even after his initial federal petition had run its course. McCann eventually filed a successive habeas application based on *Atkins*, but nothing in the record explains why he only did so at the last minute.[14] Placed within the

---

[14]     Johnson argues that McCann provided deficient representation in filing the second state habeas writ because "filing a state successor application triggers various procedural hurdles for any subsequent filings in that forum." (Docket Entry No. 8 at 35). Johnson, however, does not provide any legal support for that statement. While questions of strategy may dictate when an attorney files successive state proceedings, Texas law does not contain any explicit limitation on the number or timing of successive state habeas applications. Tex. Code Crim. Pro. 11.071 § 5(a)(1) does prohibit an inmate from raising issues that could have been presented "in a previously considered application." But the core of the habeas application filed by Johnson's current attorneys–the report from Dr. Martell–relied heavily on and does not depart significant from the core of the habeas application filed by McCann–the report from Dr. Hupp. Johnson must show that McCann's representation was objectively unreasonable, independent of questions of strategy in which reasonable attorneys may differ.

context of what McCann otherwise did to represent Johnson, questions remain about why he did not diligently pursue an *Atkins* claim.

As Johnson properly remarks, questions surrounding "Mr. McCann's performance[] and the breakdown in the attorney-client relationship cannot be adequately resolved on the current record and will require credibility determinations by the Court." (Docket Entry No. 9 at 2). The Court will hold an evidentiary hearing on the question of whether McCann's representation rendered Johnson's *Atkins* claim previously unavailable and whether it entitles Johnson to equitable tolling.

Johnson, however, asks for an evidentiary hearing that extends to consideration of the merits. Johnson argues: "The § 2244, intellectual disability, and equitable tolling issues involve inextricably interwoven questions of fact. A single hearing is the most efficient means of resolving them." (Docket Entry No. 9 at 2). AEDPA's successive-petition provisions are jurisdictional. *See Ramirez v. Davis*, 780 F. App'x 110, 114 (5th Cir. 2019). This Court has no authorization to address the merits until deciding whether Johnson has complied with Section 2244's requirements. The evidentiary hearing will not address the substance of Johnson's *Atkins* claim.

Johnson has not yet described what evidence he wishes to present or what witnesses he would like to call in an evidentiary hearing. While the parties will have some latitude, the Court anticipates that McCann's testimony will be the centerpiece of that inquiry and the need for additional witnesses or evidence is limited.

### CONCLUSION

For the reasons discussed above, the Court **DENIES** Respondent's motion to dismiss. (Docket Entry No. 13). The Court **GRANTS** Johnson's motion for an evidentiary hearing **IN PART**. (Docket Entry No. 9). The parties will confer and discuss the scope and timing of an evidentiary hearing. The parties will provide a status report within thirty (30) days from the entry

of this Order and describe what witnesses they wish to call and what evidence that they will present. The parties will also estimate the time necessary to conduct the hearing. The Court will schedule an evidentiary hearing after receiving that report.

The Clerk will provide copies of this Order to the parties.

SIGNED on <u>July 30, 2020 at Houston, Texa</u>s.

ALFRED H. BENNETT
UNITED STATES DISTRICT JUDGE