IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **DEXTER DARNELL JOHNSON**, | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:19-CV-03047 |
| | § | |
| **BOBBY LUMPKIN**, Director, | § | **DEATH PENALTY CASE** |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions | § | |
| Division, | § | |
| *Respondent*. | § | |

**BRIEF FOLLOWING MARCH 31, 2022 EVIDENTIARY HEARING**

JASON D. HAWKINS
Federal Public Defender

Jeremy Schepers
Supervisor, Capital Habeas Unit

Michael Kawi
Assistant Federal Public Defender

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, Texas 75202
jeremy_schepers@fd.org
michael_kawi@fd.org
(214) 767-2746 (tel)
(214) 767-2886 (fax)

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................... ii

I.      Introduction ......................................................................................................... 1

II.     Mr. McCann's testimony at the March 31, 2022 hearing was not credible. ........... 3

III.    Mr. Johnson's *Atkins* claim was previously unavailable to him. ............................ 8

    A. Mr. Johnson's *Atkins* claim was functionally unavailable to him due to Mr. McCann's deficient performance. ............................................................................ 8

       1.   Mr. McCann performed deficiently by failing to timely raise an *Atkins* claim on behalf of Mr. Johnson. ................................................................................. 9

       2.   Mr. McCann failed to obtain conflict-free counsel for Mr. Johnson. ........... 13

       3.   Mr. McCann failed to acquire and maintain trial counsels' files. ................. 17

    B. Alternatively, it was not feasible for Mr. McCann to amend Mr. Johnson's petition to include an *Atkins* claim based on changes in the DSM-5. .................................... 18

IV.     Mr. Johnson's untimely petition should be permitted to proceed on the basis of equitable tolling and because he is actually innocent of the death penalty. ......................... 21

    A. Mr. McCann's egregious professional misconduct warrants the exercise of equitable tolling. ...................................................................................................... 22

       1.   Mr. Johnson diligently pursued his rights. .................................................... 22

       2.   Mr. McCann's egregious professional misconduct prevented timely filing of Mr. Johnson's *Atkins* claim. ........................................................................... 23

    B. Mr. Johnson is actually innocent of the imposed sentence and is therefore entitled to an equitable exception to the statute of limitations. .................................................. 23

V.      Conclusion and Prayer for Relief ....................................................................... 26

CERTIFICATE OF SERVICE .................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atkins v. Virginia*,
    536 U.S. 304 (2002)................................................................................ *passim*

*Ex parte Briseno*,
    135 S.W.3d 1 (Tex. Crim. App. 2004)..................................................... *passim*

*In re Campbell*,
    750 F.3d 523 (5th Cir. 2014) ....................................................................8

*In re Cathey*,
    857 F.3d 221 (5th Cir. 2017) ........................................................8, 12, 18

*Ex parte Cathey*,
    No. WR-55,161-02, 2018 WL 5817199 (Tex. Crim. App. Nov. 7, 2018) ..............6

*Christeson v. Roper*,
    574 U.S. 373 (2015)................................................................................16

*Ex parte Davis*,
    No. WR-40,339-09, 2017 WL 6031852 (Tex. Crim. App. Dec. 6, 2017)..............6

*Edwards v. Vannoy*,
    141 S. Ct. 1547 (2021)............................................................................12

*Fisher v. Johnson*,
    174 F.3d 710 (5th Cir. 1999) ...................................................................22

*Ex parte Guevara*,
    No. WR-63,926-03, 2018 WL 2717041 (Tex. Crim. App. June 6, 2018) ..............6

*Harrington v. Richter*,
    562 U.S. 86 (2011)..................................................................................11

*Ex parte Henderson*,
    No. WR-37,658-03, 2018 WL 4762755 (Tex. Crim. App. Oct. 3, 2018)..............6

*Hernandez v. Stephens*,
    537 F. App'x 531 (5th Cir. 2013) .............................................................19

*Herrera v. Collins*,
    506 U.S. 390 (1993)................................................................................24

*Hinton v. Alabama*,
   571 U.S. 263 (2014) ........................................................................................11

*Holland v. Florida*,
   560 U.S. 631 (2010) ................................................................................ *passim*

*Ex parte Hunter*,
   No. 968719-A (230th Dist. Ct. Harris Cty., Tex.) ...................................................7

*Ibarra v. Thaler*,
   691 F.3d 677 (5th Cir. 2012) .......................................................................13, 14

*Ex parte Jean*,
   No. WR-84,327-01, 2017 WL 2859012 (Tex. Crim. App. June 28, 2017) .............................6

*In re Johnson*,
   935 F.3d 284 (5th Cir. 2019) ......................................................................1, 21

*Jones v. Lumpkin*,
   22 F.4th 486 (5th Cir. 2022) ..........................................................................21

*Ex parte Lizcano*,
   No. WR-68,348-03, 2018 WL 2717035 (Tex. Crim. App. June 6, 2018) ..............................6

*Ex parte Long*,
   No. WR-76,324-02, 2017 WL 3616644 (Tex. Crim. App. Aug. 21, 2017) ...........................6

*Martinez v. Davis*,
   653 F. App'x 308 (5th Cir. 2016) ....................................................................16

*Martinez v. Ryan*,
   566 U.S. 1 (2012) .................................................................................... *passim*

*McQuiggin v. Perkins*,
   569 U.S. 383 (2013) ................................................................................ *passim*

*In re Milam*,
   733 F. App'x 781 (5th Cir. 2018) ....................................................................20

*In re Milam*,
   838 F. App'x 796 (5th Cir. 2020) ....................................................................20

*Moore v. Texas*,
   137 S. Ct. 1039 (2017) ............................................................................ *passim*

*Moore v. Texas*,
   139 S. Ct. 666 (2019) ............................................................................. *passim*

*Ex parte Moore*,
　470 S.W.3d 481 (Tex. Crim. App. 2015).............................................................7

*Ex parte Moore*,
　548 S.W.3d 552 (Tex. Crim. App. 2018)...............................................5, 6, 10

*Pace v. DiGuglielmo*,
　544 U.S. 408 (2005)......................................................................................11

*Petetan v. State*,
　No. AP-77,038, 2017 WL 4678670 (Tex. Crim. App. Oct. 18, 2017) ...................6

*Rhines v. Weber*,
　544 U.S. 269 (2005).......................................................................................20

*Richards v. Quarterman*,
　566 F.3d 553 (5th Cir. 2009) ...........................................................................9

*Sawyer v. Whitley*,
　505 U.S. 333 (1992)................................................................................21, 25

*Schlup v. Delo*,
　513 U.S. 298 (1995)................................................................................21, 25

*Ex parte Sosa*,
　No. AP-76,674, 2017 WL 2131776 (Tex. Crim. App. May 3, 2017)......................6

*In re Sparks*,
　944 F.3d 572 (5th Cir. 2019) ...........................................................................10

*Tamayo v. Stephens*,
　740 F.3d 986 (5th Cir. 2014) ...........................................................................26

*Thomas v. State*,
　No. AP-77,047, 2018 WL 6332526 (Tex. Crim. App. Dec. 5, 2018)......................6

*Trevino v. Thaler*,
　569 U.S. 413 (2013)................................................................................ *passim*

*Turner v. State*,
　570 S.W.3d 250 (Tex. Crim. App. 2018)...............................................................10

*Ex parte Williams*,
　No. WR-71,296-03, 2018 WL 2717039 (Tex. Crim. App. June 5, 2018) ...............6

*In re Wood*,
　648 F. App'x 388 (5th Cir. 2016) ...............................................................8, 18, 20

iv

*Ex parte Zalobny*,
    Nos. WR-91,030-01 & 91,030-02, 2022 WL 1232657 (Tex. Crim. App. Apr.
    27, 2022) ..................................................................................................................10

**Statutes**

28 U.S.C. § 2244 ........................................................................................................ *passim*

## I.    Introduction

Currently pending before this Court is Mr. Johnson's Amended Second or Successive Petition for Writ of Habeas Corpus, which asserts that Mr. Johnson is intellectually disabled under the current diagnostic criteria set forth in the DSM-5. *See* ECF No. 8. Following the Fifth Circuit's preliminary authorization, *see In re Johnson*, 935 F.3d 284 (5th Cir. 2019), this Court issued an Order denying Respondent's Motion To Dismiss and granting Mr. Johnson's request for an evidentiary hearing. *See* ECF No. 18 at 25. The Court limited the hearing to the following questions: (1) "whether McCann's representation rendered Johnson's *Atkins* claim previously unavailable" and (2) "whether it entitles Johnson to equitable tolling." *Id.* This hearing occurred on March 31, 2022. *See* ECF No. 60 (Hearing Transcript). The Court allowed the parties to submit post-argument briefs within thirty days of the transcript becoming available. Tr. at 157:19–158:1.

When Mr. Johnson was convicted of capital murder and sentenced to death, the diagnostic criteria for evaluating intellectual disability was embodied in the DSM-IV-TR. The DSM-5 was first published on May 18, 2013. Despite recognizing the significant change in diagnostic criteria from the DSM-IV-TR to the DSM-5, Mr. Johnson's state and then-federal habeas counsel, Patrick F. McCann, failed to raise an intellectual disability claim pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002), following publication of the DSM-5. Nor did Mr. McCann investigate and bring an intellectual disability claim following the issuance of *Moore v. Texas*, 137 S. Ct. 1039 (2017) ("*Moore I*"), the Supreme Court case that invalidated the factors set forth in *Ex parte Briseno*, 135 S.W.3d 1 (Tex. Crim. App. 2004). He failed to do so despite actively litigating intellectual disability claims on behalf of other clients facing death. Instead, he claimed that he decided to wait for the Supreme Court's subsequent ruling in *Moore v. Texas*, 139 S. Ct. 666 (2019) ("*Moore II*"), before filing an *Atkins* claim on Mr. Johnson's behalf.

1

At bottom, the focus of the hearing was whether Mr. McCann should have brought an intellectual disability claim earlier in his representation of Mr. Johnson. Under the DSM-5, the answer is yes. Under *Moore I*, the answer is likewise yes. Mr. McCann's account to the contrary finds no basis in law or fact. His primary justification for not bringing an *Atkins* claim sooner on behalf of Mr. Johnson boiled down to his choice not to litigate a meritorious claim on behalf of his death-sentenced client—a "choice," which if credited by this Court, had the functional effect of forfeiting any federal review of Mr. Johnson's *Atkins* claim. Mr. McCann's excuse that he could predict both in which cases the Supreme Court would grant petitions for writ of certiorari and how the Texas Court of Criminal Appeals ("CCA") would rule in a future case applying *Moore I* is unjustifiable and is contrary to advocacy Mr. McCann performed on behalf of other death-sentenced clients.

This Court should find the successive petition requirements satisfied and that the untimely filing of the *Atkins* claim is excused. There are two general pathways by which this Court could do so. First, the Court may find that Mr. McCann's testimony was not credible and that his failure to raise an *Atkins* claim in a timely fashion was the result of inattention amounting to constructive abandonment of Mr. Johnson. Abundant examples exist supporting such a result, most notably in the significant difference between what Mr. McCann claimed occurred and what the facts show actually occurred regarding his litigation in Mr. Johnson's case. Second, even if this Court accepts Mr. McCann's testimony as credible, it should find that Mr. McCann's chosen course of litigation was objectively unreasonable to the point that it constituted egregious professional misconduct. This Court honed in on the exact issue with Mr. McCann's representation of Mr. Johnson at the evidentiary hearing: although this Court noted that "[t]his is no trivial issue" and that this "was a life-and-death issue," Mr. McCann nevertheless claimed to deliberately choose not to raise a claim

that could have resulted in relief for Mr. Johnson. Tr. at 89:13–91:8. Either way, this Court should proceed to an assessment of the merits of Mr. Johnson's *Atkins* claim.

Mr. Johnson can also demonstrate in the alternative that it was not feasible to amend his initial federal habeas petition to include an *Atkins* claim based on the timing of the DSM-5's publication and Texas's law at the time; and further, that his intellectual disability claim renders him innocent of the death penalty and therefore entitled to an equitable exception to the statute of limitations under *McQuiggin v. Perkins*, 569 U.S. 383 (2013). Accordingly, Mr. Johnson meets the requirements of 28 U.S.C. § 2244 such that this Court may rule on the merits of his *Atkins* claim.

## II.    Mr. McCann's testimony at the March 31, 2022 hearing was not credible.

Mr. McCann's testimony that he made the conscious choice to wait for *Moore II* to be issued to raise an *Atkins* claim for Mr. Johnson and that *Moore II* was the legal basis on which he relied when he did file an *Atkins* claim was not credible. *See* Tr. at 82:23–83:21, 91:7–8, 92:3–12. The evidence at the hearing offers significant support that Mr. McCann's failure to timely raise an *Atkins* claim was not the result of a strategy based on predictions regarding what multiple courts would do and was instead the result of inattention and inaction in Mr. Johnson's case that was the equivalent to abandonment. The evidence presented supports a finding that Mr. McCann's testimony was a post-hoc justification rather than an accurate reflection of his thought process at the relevant times. This justifies both finding that the *Atkins* claim was previously unavailable under § 2244(b)(2)(A) and that it qualifies for equitable tolling. *See* Sections III & IV, *infra*.

First, the best indication of Mr. McCann's thought process at the time is simply his own words and actions. Mr. McCann filed a state successor containing an *Atkins* claim on April 11, 2019, in advance of Mr. Johnson's then-scheduled May 2, 2019 execution date. Tr. at 91:15–22;

Ex. 1. Despite this being filed after *Moore II*, Mr. McCann did not assert anywhere in that filing

that *Moore II* created a new legal basis for that claim. *See* Tr. at 95:5–96:15. Instead, he cited the

DSM-5 and *Moore I* as reasons why the filing was procedurally viable at that juncture. *Id.* at 96:5–

11; Ex. 1 at 6. If Mr. McCann actually thought that *Moore II* were a new-law trigger, he would

have argued it as such in the filing. But he did not.

Second, Mr. McCann never pursued *Atkins* relief for Mr. Johnson in federal court. Mr.

McCann repeatedly raised a concern that filing an *Atkins* claim before *Moore II* would be harmful

to Mr. Johnson because a federal court would have to give deference under AEDPA to a state court

decision that would rely on the *Briseno* factors or the CCA's subsequent "banana standard," as

Mr. McCann analogized it to. Tr. at 117:22–25, 142:13–25, 147:9–12. Even after *Moore II*, though,

Mr. McCann did not file an *Atkins* claim in federal court, despite representing Mr. Johnson until

after his May 2, 2019 execution date, which this Court stayed for other reasons only two days

beforehand. *Johnson v. Stephens*, No. 4:11-cv-02466 (S.D. Tex. April 30, 2019), ECF No. 84. If

Mr. McCann actually thought that he should wait for *Moore II* to be decided to increase the chance

of success in federal court, he would have filed an *Atkins* claim in federal court at some point. Still,

he did not.

Third, Mr. McCann's purported justification relied on an incorrect timeline—which, had

Mr. McCann accurately recounted it, would have undercut his purported reliance on waiting for

*Moore II*. Mr. McCann claimed at the hearing that one reason he did not file an *Atkins* claim in the

year following *Moore I*'s issuance was because the CCA issued its intervening opinion within that

one-year window. *See* Tr. at 82:5–9 (answering that he did not file an intellectual disability claim

in the year following *Moore I* "[b]ecause of the intervening Court of Criminal Appeals' decision").

*Moore I* was published on March 28, 2017. *See Moore I*, 137 S. Ct. at 1039. But the CCA did not

rule within the year. On remand, the CCA formally adopted the DSM-5 as the diagnostic criteria governing adjudication of intellectual disability claims (and to the extent it is not inconsistent, the AAIDD) but still determined that Mr. Moore was not intellectually disabled. *See Ex parte Moore*, 548 S.W.3d 552, 560 & n.50 (Tex. Crim. App. 2018), *overruled on other grounds by Moore v. Texas*, 139 S. Ct. 666 (2019). This decision, however, was issued on June 6, 2018—over a year after *Moore I* was issued. This Court pressed Mr. McCann on this supposed justification during the hearing. *See* Tr. at 143:22–145:4. Mr. McCann admitted that the one-year mark from *Moore I* was "a potential decision point" where if it passed "you would have made a different call." *Id.* at 144:22–24. Yet that decision point came and went with no *Atkins* claim being filed on Mr. Johnson's behalf.

Fourth, Mr. McCann's attempt to excuse his failure to file an intellectual disability claim on behalf of Mr. Johnson by claiming that he knew the CCA would buck *Moore I* cannot be squared with the actual decisions coming out of that court. Although Mr. McCann conceded that he could not predict the future, *see* Tr. at 69:10–12, he nonetheless claimed that based on his quarter-century experience with the CCA, he was confident that they would continue to adhere to *Briseno* in deciding intellectual disability claims, *id.* at 85:13–16. And although it is true that the CCA would deny relief again after *Moore I*, Mr. McCann's position ignores how the CCA adjudicated numerous cases following *Moore I*, its decision in *Ex parte Moore* notwithstanding. In what may have been the first post-*Moore I* decision by the CCA, fewer than two months after *Moore I* was issued, the CCA granted relief on an intellectual disability claim and noted that "[w]hile this application was pending, the United States Supreme Court decided *Moore v. Texas*, and held that the *Briseno* factors, based upon superseded medical standards, create an unacceptable risk that a person with intellectual disabilities will be executed in violation of the Eighth

Amendment." *Ex parte Sosa*, No. AP-76,674, 2017 WL 2131776, at *1 (Tex. Crim. App. May 3, 2017).

Indeed, numerous other CCA decisions that were issued between *Moore I* and *Ex parte Moore* make clear that the CCA fully recognized that *Briseno* was no longer valid following *Moore I. See Ex parte Jean*, No. WR-84,327-01, 2017 WL 2859012, at *1 (Tex. Crim. App. June 28, 2017) (remanding intellectual disability claim to trial court to "consider all of the evidence presented in this case in light of the *Moore* opinion and without consideration of the *Briseno* factors"); *Ex parte Long*, No. WR-76,324-02, 2017 WL 3616644, at *1 (Tex. Crim. App. Aug. 21, 2017) (staying execution based on *Moore I*); *Petetan v. State*, No. AP-77,038, 2017 WL 4678670, at *1 (Tex. Crim. App. Oct. 18, 2017) (granting rehearing based on *Moore I* and noting that "[i]n *Moore*, the Supreme Court held that this Court's failure to the current medical standards and reliance on *Briseno* failed to comply with the Eighth Amendment and Supreme Court precedents"); *Ex parte Davis*, No. WR-40,339-09, 2017 WL 6031852, at *2 (Tex. Crim. App. Dec. 6, 2017) (remanding intellectual disability claim to trial court to "consider all of the evidence presented in this case in light of the Supreme Court's *Moore* opinion"). Even after the CCA issued its decision in *Ex parte Moore* in 2018, it continued to authorize intellectual disability claims and remand those claims to the trial court for a full merits review. *See Ex parte Williams*, No. WR-71,296-03, 2018 WL 2717039, at *1 (Tex. Crim. App. June 5, 2018); *Ex parte Lizcano*, No. WR-68,348-03, 2018 WL 2717035, at *1 (Tex. Crim. App. June 6, 2018); *Ex parte Guevara*, No. WR-63,926-03, 2018 WL 2717041, at *2 (Tex. Crim. App. June 6, 2018); *Ex parte Henderson*, No. WR-37,658-03, 2018 WL 4762755, at *2 (Tex. Crim. App. Oct. 3, 2018); *Ex parte Cathey*, No. WR-55,161-02, 2018 WL 5817199, at *1 (Tex. Crim. App. Nov. 7, 2018); *Thomas v. State*, No. AP-77,047, 2018 WL 6332526, at *3 (Tex. Crim. App. Dec. 5, 2018) (granting new penalty phase based on *Moore*).

Mr. McCann's testimony to the contrary displays a stunning ignorance of the CCA's jurisprudence following *Moore I*.

Finally, Mr. McCann's stated position at the hearing is inconsistent with his advocacy in other cases in which intellectual disability was at issue. As Mr. McCann acknowledged at the hearing, he represented Mr. Moore in state post-conviction proceedings during which intellectual disability was litigated. In that case, Mr. McCann sought to have the CCA use current diagnostic framework and challenged the *Briseno* factors. *See Ex parte Moore*, 470 S.W.3d 481 (Tex. Crim. App. 2015), *overruled by Moore I*. Around the same time, Mr. McCann also represented Calvin Hunter in state post-conviction proceedings and advanced an intellectual disability claim on his behalf, specifically noting the change in diagnostic criteria from the DSM-IV to the DSM-5. *See Ex parte Hunter*, No. 968719-A (230th Dist. Ct. Harris Cty., Tex.), ¶ 34; ECF No. 57-12. Mr. McCann provided no credible reason why he actively litigated intellectual disability claims on behalf of other clients but chose not to do so for Mr. Johnson.[1]

On balance, comparing what Mr. McCann claims to be the relevant facts leads to the conclusion that his failure to raise an *Atkins* claim sooner was the result of inattention and inaction that were the functional equivalent of abandonment. Further, his purported justifications are merely a post-hoc attempt to explain how Mr. Johnson has landed in the current situation. Therefore, Mr. Johnson meets the necessary legal standards for showing that the *Atkins* claim was previously unavailable under § 2244(b)(2)(A) and that it qualifies for equitable tolling, the legal standards for which are described in Sections III & IV, *infra*.

---

[1] Although Mr. McCann claimed that the facts in Mr. Johnson's case were more aggravated than those in Mr. Moore's case such that he did not think he could advance an intellectual disability claim on behalf of Mr. Johnson, *see* Tr. at 115:25–116:4, Mr. McCann had an ethical duty to raise potentially meritorious claims on Mr. Johnson's behalf.

III. **Mr. Johnson's *Atkins* claim was previously unavailable to him.**

Mr. Johnson can demonstrate that his *Atkins* claim was previously unavailable to him. At the outset, Section 2244(b)(2)(A)'s requirement that a claim be based on a new, retroactive rule of constitutional law is satisfied because courts have agreed that "*Atkins* created a new rule of constitutional law . . . made retroactive to cases on collateral review by the Supreme Court." *In re Campbell*, 750 F.3d 523, 530 (5th Cir. 2014); *accord In re Wood*, 648 F. App'x 388, 391 (5th Cir. 2016). The next requirement that Mr. Johnson must satisfy is that this new retroactive rule of constitutional law was previously unavailable to him. This Court has already determined that Mr. Johnson's *Atkins* claim was "previously unavailable until the publication of the DSM-5 in May 2013." ECF No. 18 at 17. Mr. Johnson can demonstrate that it was unavailable even after that date in three ways. First, this Court should find that Mr. McCann's testimony was not credible and that the failure to raise the claim was the result of inattention and inaction. *See* Section II, *supra*. Second, *Atkins* and the DSM-5's change in diagnostic criteria for determining intellectual disability were functionally unavailable to him during Mr. McCann's representation because that representation was fundamentally deficient. *See In re Cathey*, 857 F.3d 221, 229 (5th Cir. 2017) (quoting *Wood*, 648 F. App'x at 392). Third, and alternatively, it was not feasible for Mr. McCann to amend Mr. Johnson's pending federal habeas petition in light of the timing of the DSM-5's publication. *See Cathey*, 857 F.3d at 229 (noting the Fifth Circuit's adoption of the Eleventh Circuit's feasibility standard); *Wood*, 648 F. App'x at 391.

A. **Mr. Johnson's *Atkins* claim was functionally unavailable to him due to Mr. McCann's deficient performance.**

The record in this case—primarily based on Mr. McCann's own testimony—shows that Mr. McCann's "representation in the initial federal habeas proceedings was so deficient as to render the *Atkins* claim functionally unavailable[.]" *Cathey*, 857 F.3d at 229. First, even if this

Court credits Mr. McCann's testimony that he deliberately chose not to file an intellectual disability claim in Mr. Johnson's case when he first had the chance, this Court is "not required to condone unreasonable decisions parading under the umbrella of strategy." *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009) (internal quotations and citations omitted). Second, Mr. McCann rendered deficient performance when he failed to obtain conflict-free counsel for Mr. Johnson, despite recognizing the need to do this in other cases. Third, Mr. McCann rendered deficient performance by failing to acquire and maintain a complete case file.

### 1. Mr. McCann performed deficiently by failing to timely raise an *Atkins* claim on behalf of Mr. Johnson.

Mr. McCann knew that the DSM-5 would have a tremendous impact on defining and diagnosing intellectual disability, *see* Tr. at 59:1–4; he was litigating intellectual disability claims when the DSM-5 was published for other clients, *see id.* at 63:5–11; he thought that the DSM-5 would be applicable to Mr. Johnson, *see id.* at 66:6–11; he did no factual development on an intellectual disability claim between publication of the DSM-5 and *Moore I*, *see id.* at 18–23; he waited to take crucial investigation into Mr. Johnson's intellectual disability claim until Mr. Johnson had an execution date, *see id.* at 122:18–123:3; and he did not file an *Atkins* claim on behalf of Mr. Johnson in the year after the DSM-5 was published, *see id.* at 67:4–5. As this Court noted at the hearing, "[i]t is a fact that you've acknowledged that *Moore I* was the law of the land, which upon a clear reading afforded your client potential new rights under a life-or-death issue and you chose not to pursue that remedy under *Moore I*." *Id.* at 91:3–6. Mr. McCann agreed that he did not advance a claim on Mr. Johnson's behalf based on *Moore I. Id.* at 91:7–8.[2]

---

[2] This is not the only instance of Mr. McCann either ignoring his client's directions or otherwise violating his constitutional rights. During the trial of Albert Turner, whom Mr. McCann represented, Mr. McCann conceded Mr. Turner's guilt despite Mr. Turner's expressed desire to maintain his innocence; the Texas Court of Criminal Appeals ("CCA") determined this to be

Indeed, in another capital case in which the attorney unreasonably delayed filing an *Atkins* claim, Judge Jones on the Fifth Circuit suggested that the type of conduct exhibited by Mr. McCann here is fundamentally deficient:

> Thus, in the worst-case scenario, [counsel] was doing his client a grave disservice, if he thought the claim of mental disability had merit, by pursuing it within less than one month before the scheduled execution. There was every possibility, given the applicable state and federal procedures, that any execution delay would take some time for proper consideration. And several years had passed since the issuance of the expert guidelines (the DSM-5) that formed the basis of his claim and the Supreme Court's *Moore* decision, which required Texas to align its diagnostic requirements with those of the experts. *It is hard to envision competent counsel's having sat on a potentially meritorious exclusion from capital punishment until the eve of execution.*

*In re Sparks*, 944 F.3d 572, 574 (5th Cir. 2019) (Jones, J., specially concurring) (emphasis added).

Instead of timely pursuing an *Atkins* claim for Mr. Johnson, Mr. McCann attempted to justify his inaction based on various speculative beliefs that cannot be condoned as reasonable. Initially, he was "hoping that some case would overturn [*Briseno*], probably a Supreme Court case." Tr. at 69:21–22. This required, of course, the Supreme Court to grant a petition for certiorari, a proposition that no lawyer could reasonably base a strategy on. Then, even after *Moore I* was issued, Mr. McCann continue to wait based on his belief that the CCA would disobey the Supreme Court's clear directive in that case. *Id.* at 84:23–25. He waited, for over a year after *Moore I*, for the CCA to issue it decision on remand. *See Moore*, 548 S.W.3d at 552. He again waited, hoping for another petition for certiorari to be granted in *Moore II*, and finally filed the *Atkins* claim shortly before Mr. Johnson's first execution date.

---

reversible error and remanded the case for a new trial. *See Turner v. State*, 570 S.W.3d 250, 271–77 (Tex. Crim. App. 2018). More recently, the CCA determined that Mr. McCann rendered ineffective assistance of counsel in violation of his client's Sixth Amendment rights when he failed to file petitions for discretionary review in his case. *See Ex parte Zalobny*, Nos. WR-91,030-01 & 91,030-02, 2022 WL 1232657, at *1 (Tex. Crim. App. Apr. 27, 2022).

Mr. McCann also claimed that his decision not to file an *Atkins* claim on behalf of Mr. Johnson until after *Moore II* was based on concerns regarding AEDPA. Tr. at 117:22–25, 142:13–25, 147:9–12. Again, such a proposition is dubious because Mr. McCann never filed an *Atkins* claim on Mr. Johnson's behalf in federal court despite ample opportunity to do so. *See* Section II, *supra*. Mr. McCann claimed it is was optimal to wait to file until federal review of the *Atkins* claim would not require deference to a state court decision that relied on *Briseno* either in name or what he analogized to as the CCA's subsequent "banana standard." Tr. at 117:20–25. He also claimed that *Moore II* would be a new-law trigger that would allow for federal consideration of an *Atkins* claim at that time. Both of these purported justifications belie a significant misunderstanding of federal habeas review. *See generally Hinton v. Alabama*, 571 U.S. 263, 274 (2014) ("An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland [v. Washington*, 466 U.S. 688 (1984)].").

Mr. McCann's concern about the deferential standard of review imposed by AEDPA shows a mistaken understanding of federal habeas procedure. Certainly, Section 2254 imposes significant barriers to relief in federal court. *See Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("If this standard is difficult to meet, that is because it was meant to be."). But those barriers are not relevant to an untimely petition that is filed outside of the 1-year statute of limitations period identified in § 2244(d). Deference owed to a state-court decision is never a question for a federal habeas court until it makes a determination that the petition is timely filed. *See Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005) (explaining that untimely federal habeas petitions are barred from review). And here, even if Mr. McCann had actually filed a petition in federal court after *Moore II*, it would be untimely just as the instant successive petition is.

Relatedly, there is no cogent theory by which *Moore II* could ever trigger a new statute of limitations period or qualify as a new legal basis for a successive petition under § 2244(d). Despite never pursuing it, Mr. McCann repeatedly asserted that *Moore II* created a new legal basis for Mr. Johnson in federal court. *See, e.g.*, Tr. at 91:12–14, 91:20–22, 92:5–12, 93:4–8. New law resets the 1-year limitations period only when a "right has been newly recognized by the Supreme Court and [was] made retroactivity applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C). *Moore II* fails both elements of this section, which was easily foreseeable even before its issuance. It does not recognize any new right, and instead only applies *Atkins* and *Moore I*. Further, it plainly does not fit into the small window of cases that the Supreme Court has made retroactively applicable on collateral review. *See generally Edwards v. Vannoy*, 141 S. Ct. 1547 (2021) (explaining when new rules are retroactively applied to collateral review). Likewise, *Moore II* cannot, and could never be expected to, meet similar criteria in 28 U.S.C. § 2244(b)(2)(A) to proceed as a successive petition. That provision requires a new, previously unavailable law "made retroactive to cases on collateral review by the Supreme Court." 28 U.S.C. § 2244(b)(2)(A).

Moreover, although Mr. McCann purported to have deep institutional knowledge of the CCA's practices, his posit that the CCA would not consider such a claim flies in the face of numerous CCA decisions following *Moore I* either granting relief on an intellectual disability claim or remanding for further fact-finding in light of *Moore I*, as well as his actions in Mr. Johnson's case and others. *See* Section II, *supra* at 6 (collecting cases). To the extent that this Court credits Mr. McCann's explanations during the hearing as accurate, Mr. Johnson incorporates by reference the facts argued in Section II, *supra*, in support of the fact that Mr. McCann's "representation in the initial federal habeas proceedings was so deficient as to render the *Atkins* claim functionally unavailable[.]" *Cathey*, 857 F.3d at 229.

12

### 2.   Mr. McCann failed to obtain conflict-free counsel for Mr. Johnson.

Although it may not necessarily link directly to the failure to raise an *Atkins* claim itself, Mr. McCann failure to obtain conflict-free counsel for Mr. Johnson supports a finding that he was performing deficiently. While Mr. McCann represented Mr. Johnson in federal habeas proceedings, the Supreme Court issued its decisions in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), which taken together held that that the ineffective assistance of state habeas counsel in Texas could supply cause and prejudice for overcoming a procedurally defaulted ineffective assistance of trial counsel claim. Mr. McCann was therefore aware of the possibility that, as federal habeas counsel, he was put in the position to judge his own conduct in state habeas.[3] He nevertheless failed to obtain conflict-free counsel for Mr. Johnson.

At minimum, an actual conflict of interest existed between Mr. McCann and Mr. Johnson at the point where he attempted to untimely amended ineffective assistance of trial counsel claims into the federal petition. Mr. McCann's assertions to the contrary at the hearing are belied by his actions both in Mr. Johnson's case and in other cases. In Mr. Johnson's case, Mr. McCann claimed that *Martinez* did not apply to Mr. Johnson's case due to the Fifth Circuit's order in *Ibarra*. *See* Tr. at 108:18–109:2; *see also Ibarra v. Thaler*, 691 F.3d 677, 685 n.1 (5th Cir. 2012) (rejecting

---

[3] Mr. McCann's assertion to this Court that "[t]here is not a pool of death penalty ethics experts you can tap" is flatly incorrect. Tr. at 49:25–50:6. As a long-standing member of the Southern District's bar and who is regularly appointed in criminal cases pursuant to the Criminal Justice Act, Mr. McCann should be familiar with the Southern District's CJA Plan, which identifies numerous entities who are "death penalty experts who the Court may rely on for assistance with selecting and appointing counsel, case budgeting, and handling the legal, practical, and other matters arising in federal capital cases." General Order 2018-18, United States District Court for the Southern District of Texas, Criminal Justice Act Plan § XIV(B)(4). The plan further directs "[a]ll attorneys appointed in federal capital cases [to] consult regularly with the appropriate Resource Counsel projects." *Id.* § XIV(B)(10). Thus, it is simply false to suggest that no death penalty ethics experts exist or that Mr. McCann was unaware of resources that could have assisted him.

argument that *Martinez* could constitute cause for excusing procedural default), *overruled by Trevino v. Thaler*, 569 U.S. 413 (2013); *Ibarra v. Thaler*, No. 11-70031 (5th Cir. June 28, 2012), Doc. No. 00511903995 (ordering that *Martinez* did not apply in Texas). But six months after the Fifth Circuit issued its order in *Ibarra* that *Martinez* did not apply in Texas—and before the Supreme Court held that *Martinez* applied in Texas—Mr. McCann filed a motion to abate in Mr. Johnson's case largely based on the Supreme Court's grant of certiorari in *Trevino*. *See Johnson v. Stephens*, No. 4:11-cv-02466 (S.D. Tex. Dec. 28, 2012), ECF No. 14. Mr. McCann admitted that in this motion, he nonetheless failed to argue his own ineffectiveness for failing to previously present an ineffective assistance of trial counsel claim during state habeas proceedings. *See* Tr. at 109:13–15. What the foregoing indicates is that Mr. McCann—despite claiming that *Ibarra* rendered *Martinez* a nullity in Texas—actually argued that it should apply to Mr. Johnson's case, but at the same time refused to assess his own ineffectiveness in state habeas under *Martinez*. Rather, he chose "to defend the quality of his previous representation to his client's detriment." Declaration of Attorney Robert Schuwerk, *Johnson v. Stephens*, No. 4:11-cv-02466 (S.D. Tex. June 24, 2019), ECF No. 95-2 ("Schuwerk Decl.") ¶ 11. Accordingly, by Mr. McCann's own admission, his actions in this case do not amount to "simple negligence." *Holland v. Florida*, 560 U.S. 631, 652 (2010).

Moreover, Mr. McCann's claim at the hearing that he did not see the need to seek conflict-free counsel is further belied by his conduct in other cases following *Trevino*. *See* Tr. at 33:21–24 ("I would say that on certain instances if counsel had brought forward an actual abandoned or uninvestigated issue that could be a fair interpretation [of *Trevino*], but as far as a bright-line rule, no."); *id.* at 133:19–22 (agreeing that there was not "an automatic duty to view your own

14

ineffectiveness"). Although Mr. McCann never sought conflict-free counsel for Mr. Johnson, he did so in at least four other cases of which Mr. Johnson is aware.

First, while representing Mr. Johnson—and without doing so in Mr. Johnson's case—Mr. McCann moved for appointment of new counsel in another capital case in light of *Martinez* and *Trevino*. *See Martinez v. Stephens*, No. 4:13-cv-01994 (S.D. Tex. July 9, 2013), ECF No. 1.[4] As far as Mr. Johnson can determine, this is the only other case in which Mr. McCann sought new counsel in federal proceedings that referenced these cases. *See id.* ¶ 4 ("[S]ince the decision in *Trevino v. Thaler* 133 S.Ct. 524 (2012) [sic], the undersigned counsel believes it is his ethical duty to seek appointment of <u>separate</u> counsel as any mistakes made by state habeas counsel may form a 'gateway' through which one can bypass procedural default rules. See *Trevino v. Thaler* 133 S.Ct. 524 (2012) [sic]." (emphasis in original)). In that case—unlike Mr. Johnson's case—Mr. McCann clearly signaled to the court his awareness of his ethical duty to seek new counsel, stating "Counsel thus believes he <u>cannot</u> ethically go forward on this matter and thus be in a position where he would be forced to investigate his own potential failure to provide effective assistance." *Id.* ¶ 5 (emphasis in original). Although Mr. McCann claimed at the hearing that additional attorneys brought a potential *Martinez*/*Trevino* issue to his attention, *see* Tr. at 41:9–15 ("The lawyers that I was hoping would take that over had approached me about that. And in that case, they made a good-faith argument that they had a claim that they were probably going to bring[.]"), if anything, that plainly demonstrates how Mr. McCann was incapable of assessing his conduct in state habeas objectively and in good faith.[5]

---

[4] Although the caption in the motion filed by Mr. McCann states *Raymond DeLeon Martinez v. Brad Livingston*, the name of the respondent appears to be a typo. *See* Dkt., No. 4:13-cv-01994 (S.D. Tex.).

[5] It is worth noting that Mr. Martinez also had an intellectual disability claim. *See Martinez v. Stephens*, No. 4:13-cv-01994 (S.D. Tex. June 19, 2014), ECF No. 20. Although counsel for Mr.

Second, approximately two years after the Supreme Court issued *Trevino*, Mr. McCann sought new counsel for Tarus Vandell Sales after representing him in state habeas proceedings. *See Sales v. Stephens*, No. 4:15-cv-00256 (S.D. Tex. Jan. 28, 2015), ECF No. 1. Mr. McCann cited only *Martinez*, and not *Trevino*, but also cited *Christeson v. Roper*, 574 U.S. 373 (2015). Unlike *Trevino*, which held that the ineffectiveness of state habeas counsel *could* provide cause and prejudice for excusing the procedural default of failing to raise an ineffective assistance of trial counsel claim, in *Christeson* the Supreme Court faulted the lower court for failing to identify an *actual* conflict of interest where counsel would have had to "denigrate their own performance" to advance a claim on behalf of their client. *Id.* at 378 (citing, *inter alia*, Restatement (Third) of the Law Governing Lawyers § 125 (2000) ("[A] lawyer may not represent a client if there is a substantial risk that the lawyer's representation of the client would be materially adversely affected by the lawyer's financial or other personal interests.")).[6] Then, approximately two months later, Mr. McCann filed a nearly identical motion for appointment of new counsel in another capital case. *See Smith v. Stephens*, No. 4:15-cv-00707 (S.D. Tex. Mar. 16, 2015), ECF No. 1.

---

Martinez did not raise *Martinez/Trevino* in connection with this claim in federal court, counsel did note that Mr. McCann, as state habeas counsel, never hired an expert to evaluate his intellectual disability claim—this despite record evidence of a 65 IQ score. *See id.* at 43–44; *see* ECF No. 20-4 (TDCJ intake document noting 65 IQ score). The Fifth Circuit refused to grant a COA on this claim and expressly relied on the state habeas court's evaluation of the *Briseno* factors. *See Martinez v. Davis*, 653 F. App'x 308, 316–17 (5th Cir. 2016). The Supreme Court granted certiorari, vacated that decision, and remanded in light of *Moore I. Martinez v. Davis*, 137 S. Ct. 1432 (Mem) (2017). Unfortunately, shortly after that happened, Mr. Martinez died of natural causes before resolution of that claim. *See* https://www.tdcj.texas.gov/death_row/dr_offenders_no_longer_on_dr.html.

[6] The situation described in *Christenson* directly applies to Mr. McCann's representation of capital defendants in Texas. As Professor Schuwerk describes, "[i]n Texas, this type of conflict is compounded by the fact that Texas attorneys previously qualified to represent capital defendants may have their eligibility revoked due to a finding by any state or federal court that the attorney rendered ineffective assistance in any criminal case or engaged in the practice of unprofessional or unethical behavior." Schuwerk Decl. ¶ 8.

16

Finally, approximately four months after that, Mr. McCann reversed course and requested that he be retained as federal counsel in yet another capital case, *Trevino* notwithstanding. *See Hamilton v. Stephens*, No. 4:15-cv-01996 (S.D. Tex. July 13, 2015), ECF No. 1. Mr. McCann stated that he and co-counsel "have worked closely on the case and believe they are best suited to assist Mr. Hamilton in federal court." *Id.* at 1. He nonetheless noted that "[t]here is an argument that appointed counsel should request new counsel on federal district court" but that he "had weighed this against [his] knowledge of case" and requested that he "be appointed to the federal habeas." *Id.* at 1–2.[7] After Mr. Hamilton wrote to the court and asked that Mr. McCann *not* be appointed to represent him, however, *see id.* ECF No. 4-1, Mr. McCann asked the court "to appoint new qualified counsel to pursue habeas remedy in this case," *id.* ECF No. 5.

The foregoing demonstrates that Mr. McCann knew he should have sought conflict-free counsel to represent Mr. Johnson; that he was incapable of assessing his own prior conduct and relied on other attorneys to bring that conduct to his attention; and that in several other cases, Mr. McCann withdrew representation to allow clients to have conflict-free counsel in federal court.

### 3. Mr. McCann failed to acquire and maintain trial counsels' files.

Mr. McCann admitted at the hearing that he had never asked for the files of Anthony Osso, second chair trial counsel, until Mr. Johnson was under warrant in 2019. Tr. at 26:10–15. According to Mr. Osso, Mr. McCann contacted him for his files in Mr. Johnson's case on either February 6 or 7, 2019. ECF No. 54-4 at 11, 43. That was within two days of this Court ordering appointing of the FPD's office to Mr. Johnson's case. *Johnson v. Stephens*, 4:11-cv-02466 (S.D.

---

[7] Although the motion states at the outset that "[t]he undersigned counsel respectfully requests that this Court exercises its authority to appoint new death qualified counsel as quickly in this matter as possible," *id.* at 1, this appears to be cut and pasted from the prior two motions he filed. The thrust of the motion in this case is Mr. McCann's desire to remain as federal habeas counsel following his representation in state habeas.

Tex. Apr. 30, 2019), ECF No. 70. Although Mr. McCann claimed he initially obtained a copy of the files of Jim Leitner, the first chair at trial, in 2007 or 2008, Mr. McCann testified that those files were destroyed in Hurricane Harvey in 2017. *See id.* at 123:23–25, 126:8–13. In contrast, Mr. Leitner does not remember Mr. McCann ever collecting that file. ECF No. 54-3 at 16.

At a minimum, Mr. McCann's testimony confirms that he did not have any of the trial attorneys' file at the time Mr. Johnson's execution date was set, and indeed did not seek to obtain a complete file until *after* Mr. Johnson had been under warrant for some time and *after* the FPD's office was appointed. Even crediting Mr. McCann's version of events, he went well over a year without any trial files in Mr. Johnson's case. Most egregiously, since Mr. Johnson's execution date was set on December 6, 2018, for May 2, 2019, Tr. at 30:8–9, he went more than two months without any trial files while Mr. Johnson was under warrant. This failure on Mr. McCann's part violates basic ethical duties to which Mr. Johnson was owed. *See* ECF No. 8 at 39 (citing Texas and American Bar Association Guidelines concerning an attorney's duties to maintain and be familiar with trial counsels' files).

### B. Alternatively, it was not feasible for Mr. McCann to amend Mr. Johnson's petition to include an *Atkins* claim based on changes in the DSM-5.

In the alternative, it was not feasible for Mr. McCann to amend Mr. Johnson's pending federal habeas petition to include an *Atkins* claim based on the DSM-5. *See Cathey*, 857 F.3d at 229; *Wood*, 648 F. App'x at 391. *Cathey* adopted the *Wood* court's unpublished holding of "a rebuttable presumption that a new rule of constitutional law was previously available if published by the time a district court ruled on a petitioner's initial habeas petition." *Cathey*, 857 F.3d at 229. *Cathey* further recognized that "a claim must have some possibility of merit to be considered available." *Id.* at 232. Mr. Johnson's intellectual disability claim was meritorious only after publication of the DSM-5. *See* ECF No. 8 at 9–14. The DSM-5 was published on May 18, 2013—

18

almost two years after Mr. Johnson filed his initial federal habeas petition, nearly fifteen months after the State filed its answer, and nearly ten months after Mr. Johnson replied. ECF No. 8 at 14. As this Court has previously recognized, "this Court's order disallowing amendment, issued only months after the DSM-5 was published, could discourage an attorney from attempting to insert an *Atkins* claim into the proceeding." ECF No. 18 at 19; *see Johnson v. Stephens*, No. 4:11-cv-02466 (S.D. Tex. Aug. 19, 2013), ECF No. 19 ("Restarting the process at this stage would needlessly insert delay into the proceedings.").

The question of whether it was feasible to amend a petition to include an intellectual disability claim for the first time was compounded by "the landscape of Texas *Atkins* jurisprudence at that stage." ECF No. 18 at 19. Although the first reference to the DSM-5 in Texas courts (state and federal) appears to be in August 2013, that case—while acknowledging in a footnote that the DSM-5 "de-emphasizes IQ scores as determinants of [intellectual disability]"—focused exclusively on whether the state court's handling of the *Briseno* factors was unreasonable. *Hernandez v. Stephens*, 537 F. App'x 531, 533 n.1, 534–40 (5th Cir. 2013). Thus, despite the change in diagnostic criteria in the publication of the DSM-5, "[g]iven the emphasis of the Texas courts on stale standards and non-clinical concerns . . . an attorney at that point in time may not have felt that it was feasible to raise a viable claim based on its revised standards." ECF No. 18 at 19. Moreover, the possible lack of clarity in Texas about the state of the law combined with the time-consuming nature of investigating and working up an *Atkins* claim would have made it extremely difficult, if not close to impossible, to move to and amend the petition, and move to stay and abey to go back to state court to exhaust that claim. *See* ECF No. 8 at 15 n.9. For these reasons, it was not feasible to amend Mr. Johnson's initial petition to include an *Atkins* claim.

*Wood* does not warrant a different conclusion. In *Wood*, *Atkins* was issued just over a month after Mr. Wood filed his initial federal habeas petition and four months before he filed an amended petition. *Wood*, 648 F. App'x at 389–90. Mr. Wood claimed that he could not amend his petition to include an *Atkins* claim because Texas's two-forum rule would have precluded consideration of a subsequent state habeas application while his federal application was pending. *See id.* at 391–92. What Mr. Wood failed to address, though, is that the federal district court had not yet ruled on his federal habeas application when *Rhines v. Weber*, 544 U.S. 269 (2005), was decided—such that Mr. Wood could have moved for a stay and abeyance but did not. *See id.* at 392–93. Here, however, the DSM-5 was published two years *after* Mr. Johnson's initial federal habeas was filed and six months after he moved to stay and abey in federal court on other claims. *See* ECF No. 18 at 17; *Johnson v. Stephens*, No. 4:11-cv-02466 (S.D. Tex.), ECF No. 14. Rather, Mr. Johnson's case squarely falls under the situation the Fifth Circuit identified in *Leal Garcia v. Quarterman* when it noted "[t]here may be room for debate as to whether, while a petitioner is this far along in his initial petition and awaiting a decision, he should be required to add a freshly minted claim to it[.]" 573 F.3d 214, 223 (5th Cir. 2009); *see* ECF No. 18 at 17 n.11.

Mr. Johnson's case is similarly distinguishable from *In re Milam*, 838 F. App'x 796, 798–99 (5th Cir. 2020), in which the Fifth Circuit likewise found that it was feasible for Mr. Milam to amend his federal habeas petition to include a claim involving *Moore I*. Whereas Mr. Milam's pending federal habeas petition contained an ineffective assistance of trial counsel claim based on their failure to adequately litigate intellectual disability at trial, *see In re Milam*, 733 F. App'x 781, 787 (5th Cir. 2018), Mr. Johnson's pending federal petition contained no claims involving intellectual disability and Mr. McCann admitted that he had not yet even contemplated raising such a claim, *see, e.g.*, Tr. at 66:19–23. Given the time and complexity of investigating intellectual

20

disability claims, it was not feasible for Mr. McCann to have amended the pending federal habeas

petition to include an *Atkins* claim given how late in the process that proceeding was.

**IV.    Mr. Johnson's untimely petition should be permitted to proceed on the basis of equitable tolling and because he is actually innocent of the death penalty.**

Mr. Johnson is entitled to full merits consideration of his intellectual disability claim

despite its untimeliness. Mr. Johnson's *Atkins* claims depends on the changes to the diagnostic

criteria embodied in the publication of the DSM-5. *See* ECF No. 8 at 31. Accordingly, AEDPA's

one-year statute of limitations began to run on the date the DSM-5 was published, which occurred

on May 18, 2013. *See Johnson*, 935 F.3d at 296; ECF No. 18 at 22; *see also* 28 U.S.C.

§ 2244(d)(1)(D). Mr. McCann admitted at the evidentiary hearing that he did not file an *Atkins*

claim in the year following the DSM-5's publication, nor did he file an *Atkins* claim in the year

following the Supreme Court's decision in *Moore I*. *See* Tr. at 66:19–23, 91:2–8. Despite Mr.

McCann's failure to timely file an *Atkins* claim on behalf of Mr. Johnson, Mr. Johnson is entitled

to proceed for two reasons. *See generally Jones v. Lumpkin*, 22 F.4th 486, 490 (5th Cir. 2022)

("Because of the limitations placed on second and successive federal habeas applications, courts

are cautious not to apply the statute of limitations too harshly." (internal quotations omitted)). First,

Mr. McCann's egregious professional misconduct warrants equitable tolling. *See Holland*, 560

U.S. at 649. Second, this Court may exercise equitable exception to the statute of limitations

because Mr. Johnson's intellectual disability renders him innocent of the death penalty. *See*

*Perkins*, 569 U.S. at 386; *see also Schlup v. Delo*, 513 U.S. 298, 313 (1995); *Sawyer v. Whitley*,

505 U.S. 333, 336, 338–40 (1992). Mr. Johnson's intellectual disability claim is therefore timely.

### A. Mr. McCann's egregious professional misconduct warrants the exercise of equitable tolling.

This Court may exercise equitable tolling to Mr. Johnson's intellectual disability claim based on Mr. McCann's egregious professional misconduct. *See Holland*, 460 U.S. at 649. *Holland* provides that a petitioner is entitled to equitable tolling if (1) he can demonstrate that "he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (internal quotations and citations omitted). As in *Holland*, "the extraordinary circumstances at issue involve an attorney's failure to satisfy the professional standards of care." *Id.* (internal quotations omitted). As previously explained by this Court, "[p]rofessional misconduct by an attorney may constitute an extraordinary circumstance warranting equitable tolling if the misconduct is not a garden variety claim of excusable neglect, but is egregious behavior equivalent to abandonment." ECF No. 18 at 22 (internal quotations omitted). Mr. Johnson can satisfy both elements under *Holland*.

### 1. Mr. Johnson diligently pursued his rights.

Even laboring under an intellectual disability,[8] Mr. Johnson diligently pursued his rights. At the hearing, Mr. McCann admitted that he could not point to a single instance in which he informed Mr. Johnson of the *Martinez* and *Trevino* decisions that afforded Mr. Johnson the right to conflict-free counsel. *See* Tr. at 54:10–55:1. As soon as other people on Texas's death row informed Mr. Johnson about this conflict of interest, Mr. Johnson immediately took the extraordinary step of writing to this Court to request conflict-free counsel. *See* ECF No. 8 at 32–34. Under these circumstances, and as further described in Mr. Johnson's successive petition, Mr. Johnson can show that he diligently pursued his rights under *Holland*.

---

[8] The Fifth Circuit has previously recognized that mental incompetence could support tolling AEDPA's statute of limitations. *See Fisher v. Johnson*, 174 F.3d 710, 715–16 (5th Cir. 1999).

### 2.  Mr. McCann's egregious professional misconduct prevented timely filing of Mr. Johnson's *Atkins* claim.

Mr. McCann's conduct in representing Mr. Johnson was egregious behavior and the equivalent of abandonment as it pertains to an *Atkins* claim. *See Holland*, 560 U.S. at 649–53. Although Mr. McCann certainly filed various pleadings and pursued appeals in Mr. Johnson's case, the record before this Court belies Mr. McCann's assertion that he made a speculative decision to wait on possible court rulings before pursuing an *Atkins* claim. Instead, he failed to do so based on inattention to Mr. Johnson's case. Mr. Johnson incorporates the assertions made in Sections II & III, *supra*, which likewise establish constructive abandonment justifying equitable tolling.

### B.  Mr. Johnson is actually innocent of the imposed sentence and is therefore entitled to an equitable exception to the statute of limitations.

Mr. Johnson can also show that an equitable exception to the statute of limitations is warranted because he is innocent of the death penalty due to his intellectual disability. The Supreme Court held in *Perkins* that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." 569 U.S. at 386. Although that case concerned actual innocence of the crime of conviction, as opposed to the sentence imposed, *see id.* at 392, the reasoning employed in *Perkins*—as well as the cases on which *Perkins* relied—demonstrate that *Perkins* should be applied to innocence of the death penalty. In a case where, as here, Mr. Johnson can demonstrate that he is intellectually disabled, he can also therefore demonstrate that he is innocent of the sentence imposed on him such that an equitable exception to the statute of limitations is warranted.

23

Mr. Johnson's entitlement to an equitable exception to the statute of limitations under *Perkins* is grounded in the Supreme Court's repeated recognition that the "'fundamental miscarriage of justice exception'" to imposing either procedural bars or the statute of limitations has "survived AEDPA's passage." *Id.* at 392–93 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). "This rule . . . is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Herrera*, 506 U.S. at 404. Noting that *Perkins* is grounded in prior Supreme Court decisions, *Perkins* itself observed that "[s]ensitivity to the injustice of incarcerating an innocent individual should not abate when the impediment is AEDPA's statute of limitations." *Perkins*, 569 U.S. at 393. In so holding, the Supreme Court expressly rejected the State's argument that § 2244(d)'s statute of limitations precludes consideration of actual innocence in determining whether a petitioner is excepted from the statute of limitations. *See id.* at 394–95. Instead, it held that "[t]he text of § 2244(d)(1) contains no clear command countering the courts' equitable authority to invoke the miscarriage of justice exception to overcome expiration of the statute of limitations governing a first federal habeas petition." *Id.* at 397.[9] As the foregoing demonstrates, nothing in *Perkins* indicates that its holding is limited to innocence of the *crime* as opposed to innocence of the *sentence*.

That *Perkins* extends to innocence of the sentence—which, in Mr. Johnson's case, means innocence of the death penalty—is further confirmed by precedent on which *Perkins* relies. First, although *Perkins* itself was not a case in which the death penalty was imposed, *see Perkins*, 569 U.S. at 388, *Perkins* nonetheless noted that its "reading of the statute is supported by the Court's opinion in *Holland*." *Holland* was a criminal case in which the petitioner received the death penalty

---

[9] The Court's reference to a first federal habeas petition here does not alter its central holding that equity allows the tolling of the statute of limitations set forth in § 2244(d)(1), which also applies to second or subsequent federal habeas petitions.

and for which the Supreme Court held that "the timeliness provision of in the federal habeas corpus statute is subject to equitable tolling" without regard to innocence of either the crime or the sentence. *See Holland*, 560 U.S. at 634–35. The Supreme Court so held because "equitable principles have traditionally governed the substantive law of habeas corpus" and "AEDPA's subject matter, habeas corpus, pertains to an area of the law where equity finds a comfortable home." *Id.* at 646–47 (internal citations and quotations omitted). The logic employed in *Holland* directly supports the exercise of an equitable exception based on innocence of the death penalty.

Second, *Perkins*'s reliance on *Schlup*, 513 U.S. at 324, further supports its application to innocence of the sentence imposed. As in Mr. Johnson's case, Mr. Schlup's claim of innocence provided a gateway for the court to consider his underlying constitutional claims; here, Mr. Johnson's innocence of the death penalty provides a gateway for this Court to determine his intellectual disability claim under the Eighth Amendment. *See id.* at 315. The Court recognized in *Schlup* that its cases have "consistently reaffirmed the existence and importance of the exception for fundamental miscarriages of justice," which "seeks to balance the societal interests in finality, comity, and conservation of scare judicial resources with the individual interest in justice that arises in the extraordinary case." *Id.* at 321, 324; *accord Perkins*, 569 U.S. at 393. In addition, *Schlup* did not disturb the Supreme Court's earlier decision in *Sawyer v. Whitley*, in which the Court held that actual innocence of the death penalty could overcome a procedural default allowing courts to consider second or subsequent habeas applications. *See Schlup*, 513 U.S. at 326; *Sawyer*, 505 U.S. at 335–36. *Perkins* itself held "that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* or *House*, or, as in this case, expiration of the statute of limitations." *Perkins*, 569 U.S. at 386. Reading *Perkins* together with *Holland*, *Schlup*, and *Sawyer*, it is clear that the reasoning

employed in these cases supports exercising an equitable exception to the statute of limitations for a person such as Mr. Johnson, who is innocent of the death penalty due to his intellectual disability.[10]

In sum, Mr. Johnson's intellectual disability claim is timely.

## V.  Conclusion and Prayer for Relief

For these reasons, Mr. Johnson respectfully requests that his successive petition meets the requirements of 28 U.S.C. § 2244 and that the petition's untimeliness should be equitably excused. Respectfully submitted,

JASON D. HAWKINS
Federal Public Defender

*/s/ Jeremy Schepers*
Jeremy Schepers
Supervisor, Capital Habeas Unit

Michael Kawi
Assistant Federal Public Defender

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, Texas 75202
jeremy_schepers@fd.org
michael_kawi@fd.org
(214) 767-2746
(214) 767-2886 (fax)

---

[10] As Mr. Johnson argued in his Amended Second or Successive Petition for Writ of Habeas Corpus, *see* ECF No. 8 at 41, neither the Supreme Court nor the Fifth Circuit has resolved whether *Perkins* applies to claims of actual innocence of the death penalty, *see Tamayo v. Stephens*, 740 F.3d 986, 990 (5th Cir. 2014) (noting that the court did not resolve that question in *Tamayo*).

**CERTIFICATE OF SERVICE**

I, Jeremy Schepers, certify that on May 11, 2022, a copy of the foregoing was delivered via ECF to the Texas Attorney General's Office, counsel for the Director, Gwendolyn Vindell.


*/s/ Jeremy Schepers*
Supervisor, Capital Habeas Unit